United States Court of Appeals,

Eleventh Circuit.

No. 95-9052.

OSRAM SYLVANIA, INC., Plaintiff-Appellee,

v.

TEAMSTERS LOCAL UNION 528, Defendant-Appellant.

July 16, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-CV-2986-GET), G. Ernest Tidwell, Chief Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and SCHWARZER[*], Senior District Judge.

KRAVITCH, Circuit Judge:

Teamsters Local Union No. 528 appeals the decision of the district court reversing an arbitrator's decision in favor of one of its members, Lonnie Robinson. The union argues that the arbitrator was within the scope of his discretion in determining that Robinson was not fired for "just cause." We agree with the union and reverse the decision of the district court vacating the arbitration award. We remand to the district court for reconsideration of the union's motion for leave to amend its answer and assert a counterclaim.

I.

Robinson was a forklift driver for Osram Sylvania, Inc.[1] On February 5, 1994, he committed a safety violation by running into

---

[*]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

[1]These facts are taken primarily from the district court's Order of July 31, 1995.

a stack of pallets while driving his forklift with an obstructed view. After the accident, Robinson reported an injury. On February 10, he was treated and given a "light duty slip," which restricted his duties. On February 16, he was given a "fit for duty slip" and was released to return to work on February 21. Upon receiving the slip from the doctor's secretary, Robinson said, "You all can take these papers and shove it."

When he returned to work, Robinson gave the facility manager, Alan Geller, the outdated "light duty slip." Upon learning that Robinson had in fact been cleared to return to his normal duties, Geller decided to review Robinson's employment for possible termination. At that time, Geller already had received a recommendation from Osram's safety coordinator to terminate Robinson based on a review of his overall safety record.

Geller discharged Robinson for the following reasons: (1) misconduct while receiving medical treatment, (2) unwillingness to work after being released by his physician, and (3) a poor overall safety record. Robinson did not receive a warning prior to his discharge.

Robinson's employment was governed by a collective bargaining agreement ("Agreement") between Osram and Teamsters Local Union No. 528. The relevant portion of the collective bargaining agreement, Article IX, § 5, provides, in pertinent part:

> The Company may discharge any employee for just cause and shall give at least one (1) warning notice of the complaint against such employee to the employee and notice of the same to the Union, except that no warning notice need be given to an employee before discharge if the cause of discharge is so serious that the immediate removal of the employee from Company premises is, in the Company's judgment warranted.

If an employee discharge case is not settled within ten days, the Agreement provides for arbitration of the employee's grievance. Agreement, Article VIII. The arbitrator's decision is final and binding. *Id.* at Article VII, § 2.3. However, the arbitrator has no authority "to modify, amend, revise, add to or subtract from any of the terms of th[e] Agreement" or impose an obligation not provided for in the Agreement. *Id.* at Article VIII, § 2.2.

As to each ground for dismissal, the arbitrator found that the company lacked just cause. His findings were as follows:

*Misconduct While Receiving Medical Treatment:* Telling a doctor's secretary to "shove it" in reference to the doctor's work return slip did not constitute just cause because it did not occur on the company's premises and the statement was not made in reference to a company employee, the statement caused no disruption in work, Robinson did not receive any warning about the consequences of his conduct, the punishment was inconsistent with the treatment of other employees, and the seriousness of the offense was not reasonably related to the severity of the disciplinary penalty.

*Unwillingness to Work After Being Released By His Physician:* "The apparent deception engaged in by [Robinson] is certainly serious and a violation of rules of ethics and Company policy. However, in light of the Company's policy of selective discipline and its failure to uniformly and consistently apply progressive discipline across the board evenhandedly, [Robinson's] infraction would warrant discipline but not immediate discharge."

*Overall Safety Record:* Osram did not establish just cause for

the discharge that was based on Robinson's overall safety record because he was given no notice, suffered disparate treatment, and the penalty was disproportionately severe.

In addition to making these findings, the arbitrator credited testimony that Robinson was a "very good employee" and that he had won three awards for his work.  Based on all of the evidence, the arbitrator determined that "the degree of discipline administered by management was not reasonably related to the Grievant's service record with the Company."  The arbitrator concluded that "the dismissal was not based on just cause."

The company filed a complaint in the district court challenging the arbitrator's decision.  The court entered summary judgment for the company and vacated the arbitrator's decision and award.

## II.

We review *de novo* the district court's order vacating the arbitration award.  *Sullivan Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union,* 980 F.2d 1424, 1426 (11th Cir.1993).  The proper standard in reviewing an arbitrator's decision is one of considerable deference.  This court has stated that

> [c]ourts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts....  The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.  But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364,

371, 98 L.Ed.2d 286 (1987); *see also Delta Air Lines v. Air Line Pilots Assoc.,* 861 F.2d 665, 670 (11th Cir.1988) ("An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference."), *cert. denied,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *Florida Power Corp. v. International Bhd. of Elec. Workers,* 847 F.2d 680, 681-82 (11th Cir.1988) ("Perhaps the single most significant and common issue to which this deference extends is the issue of what constitutes sufficient and reasonable cause for discharge."). Nevertheless, "an arbitrator is confined to interpretation and application of the collective bargaining agreement.... When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, our review of a labor arbitration award "is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. BCTW Local 361,* 726 F.2d 698, 699 (11th Cir.1984).

Osram makes two arguments. First, it argues that Article IX, § 5 of the Agreement gave Osram the sole right to determine whether a violation was "so serious" as to warrant immediate discharge without consideration of just cause and thus once the arbitrator found that the factual predicates for the discharge were proven, he was required to approve the discharge. Second, Osram contends that

the arbitrator went beyond the terms of the Agreement and improperly imposed a new obligation on Osram by refusing to find "just cause."

We can quickly dispose of the first argument. In their hearing before the arbitrator the parties stipulated to the following question: "Whether the discharge of Lonnie Robinson is for just cause? If not, what shall be the remedy based on Article IX, Section 5 of the Labor agreement." Having stipulated to this narrow question, Osram may not now attempt to have the arbitrator's decision overturned on different grounds. Because the question of whether Osram could have terminated Robinson merely by finding that he committed what it deemed a "serious offense" was not an issue before the arbitrator, it is not an issue on this appeal. *See, e.g., International Chemical Workers Union Local 566 v. Mobay Chemical Corp.,* 755 F.2d 1107, 1110 (4th Cir.1985) (A party may "not voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator."); *see also Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980)[2] (A court must look both to the parties' contract and "to the submission of the issue to the arbitrator to determine [arbitrator's] authority."). We turn, therefore, to the issue of whether the arbitrator's finding of "just cause" violated the terms of the collective

---

[2]Decisions of the Fifth Circuit decided prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

bargaining agreement.

In order to prevail on its claim, Osram must refute every reasonable basis upon which the arbitrator may have acted. *Sullivan Long & Hagerty, Inc.,* 980 F.2d at 1427. In reaching his conclusion that Robinson's termination was without just cause, the arbitrator found that for each of the counts of alleged misconduct Robinson was punished in an unfairly disparate manner. Because this disparate treatment alone could serve as the basis of holding that just cause was lacking, Osram must demonstrate that such a decision went beyond the terms of the Agreement. *See, e.g., Waverly Mineral Products Co. v. United Steelworkers,* 633 F.2d 682, 684-85 (5th Cir.1980) (upholding an arbitrator's finding of no just cause where there was disparate discipline for the same rule infraction); *see also HMC Mgmt. Corp. v. Carpenters Dist. Council of N.O.,* 759 F.2d 489, 490 (5th Cir.1985) (dissent to denial of reh'g en banc) ("There is virtual universal acceptance that discriminatory discipline violates "just cause' disciplinary standards in contracts even though the word discrimination never appears in that context.").

To refute the finding of disparate treatment, Osram argues that in reaching his conclusion the arbitrator relied on irrelevant and immaterial post-discharge evidence. Specifically, the arbitrator considered evidence of an incident that occurred over 100 days after Robinson's discharge and 60 days after Geller had relocated to another city and taken another job.

In support of this claim, Osram relies primarily on *Butterkrust Bakeries,* 726 F.2d 698. In *Butterkrust,* an arbitrator

found that an employer had just cause to terminate an employee for disciplinary problems, but determined that this finding would be reversed upon the employee's successful completion of a Dale Carnegie course. *Id.* at 699. This court held that once the arbitrator made a "just cause" finding, the arbitrator no longer had authority over the parties to the dispute and could not, therefore, rely on the grievant's post-discharge conduct to change his finding. *Id.* at 700.

Osram argues that the arbitrator in this case was not permitted to consider evidence of Osram's treatment of another employee that occurred after Robinson's discharge. This argument, however, misses the point of *Butterkrust,* which stands only for the proposition that a *grievant's* post-discharge conduct is irrelevant in determining just cause for termination. Evidence that the employee in that case completed a Dale Carnegie course after his discharge was irrelevant because it had no bearing on whether the employee's conduct constituted just cause for firing. Whether or not he learned how to "win friends" could not change the fact of his previous behavior. By considering such evidence, the arbitrator went beyond the collective bargaining agreement and created what amounted to a rule for reinstatement following a discharge for just cause.

In contrast, where the just cause determination is tied to a finding of disparate treatment, as it was in this case, evidence of how an employer treats employees even after the grievant's discharge may be highly relevant. Disparate treatment exists when similarly situated workers are treated differently even though they

have committed similar acts.[3] Where, as here, there has been no change in the governing contract, and the time period under consideration is not unreasonably long, it is appropriate to consider an employer's post-discharge acts in determining whether that employer is treating all employees equally: evidence of an isolated act of discipline that occurred ten years prior to Robinson's discharge would almost certainly be less probative than evidence of an act that occurred within a year after his discharge. In fact, in some circumstances, evidence of an employer's action taken after an employee has been terminated may be the only evidence of disparate treatment. To give just one example, proof of age discrimination usually rests upon evidence of an employer's post-discharge decision to replace the fired worker with someone who is younger. *Cf. O'Connor v. Consolidated Coin Caterers Corp.,* --- U.S. ----, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (discussing proof of age discrimination).

Because disparate treatment is a legitimate basis for finding a lack of just cause, *Waverly Mineral Products Co.,* 633 F.2d at 684-85, the arbitrator did not act improperly when he considered post-discharge evidence. *Cf. Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 303 (1982) (Post-discharge evidence of employee's "serious mental disorder" may be considered in determining whether company had just cause to terminate employee.). In view of the evidence before him, the arbitrator cannot be said

---

[3]Osram argues that the "violation" committed by the employee to whom Robinson was compared involves facts completely dissimilar to those in Robinson's case. The arbitrator obviously thought otherwise; because that determination is not irrational, it will not be disturbed.

to have gone beyond the essence of the collective bargaining agreement or to have exceeded his authority when he determined that Robinson's termination constituted disparate treatment and thus lacked just cause.[4]  Accordingly, we reverse the decision of the district court vacating the arbitrator's award.

### III.

After granting Osram's motion for summary judgment, the district court denied the union's motion for leave to amend its answer and assert a counterclaim.  The court denied this motion for the sole reason that it had vacated the arbitrator's award;  in essence, the district court denied the motion as moot.  By reversing the district court, we have undermined the articulated basis for denying Osram's motion.  It is appropriate, therefore, to remand this case to the district court so that it may reconsider the motion.

### IV.

The opinion of the district court is REVERSED and this case is REMANDED with instructions to enter judgment in favor of appellants and for reconsideration of the union's motion for leave to amend its answer and assert a counterclaim.

---

[4]Because the arbitrator's finding of disparate treatment is a sufficient basis for his decision, we need not consider Osram's objections to the other reasons given by the arbitrator.