In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3220

Matt Lindland,

Plaintiff-Appellee,

v.

United States of America Wrestling
Association, Inc., United States
Olympic Committee, and Keith Sieracki,

Defendants-Appellants.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5151--James B. Zagel, Judge.


No. 00-3236

Keith Sieracki,

Plaintiff-Appellant,

v.

United States of America Wrestling
Association, Inc., and United States
Olympic Committee,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5348--James B. Zagel, Judge.


Submitted August 30 and September 1, 2000--Decided
September 1, 2000--Opinion September 5, 2000/*


   Before Easterbrook, Manion, and Diane P. Wood, Circuit
Judges.

   Easterbrook, Circuit Judge.  Readers of our prior
opinions (or the sports pages) know that Keith
Sieracki and Matt Lindland both believe that they
are entitled to be the U.S. entrant in the 76

kilogram weight class of Greco-Roman wrestling at the 2000 Olympic Games. They have met twice in championship bouts where the Olympic spot was the victor's reward: Sieracki won the first by a score of 2-1; Lindland won the second by a score of 8-0. Each claims that his victory entitles him to the slot in Sydney. Lindland protested the result of the first match through the hierarchy of USA Wrestling, the national governing body for amateur wrestling. After USA Wrestling rejected his protests, Lindland commenced arbitration, which was his right under the Ted Stevens Olympic and Amateur Sports Act. See 36 U.S.C. sec.220529(a). Arbitrator Burns ordered the rematch, which Lindland won. USA Wrestling was unwilling to accept this outcome; instead of sending Lindland's name to the United States Olympic Committee (USOC) as its nominee for the Games, it told the USOC to send Sieracki and listed Lindland only as a person eligible to compete in the event of injury. Lindland then sought confirmation of the Burns Award under sec.9 of the Federal Arbitration Act, 9 U.S.C. sec.9, and in an opinion issued on August 24 we held that Lindland is entitled to that relief-- which, we pointedly added, means that he is entitled to be USA Wrestling's nominee to the USOC. Lindland v. USA Wrestling Association, Inc., No. 00-3177 (7th Cir. Aug. 24, 2000).

Later that day, USA Wrestling informed the USOC that Sieracki remained its nominee. Its explanation for this defiance was that a second arbitrator, in a proceeding initiated by Sieracki, had disagreed with Arbitrator Burns and directed USA Wrestling to make Sieracki its nominee on the basis of his victory in the first match. USA Wrestling had no excuse for following Arbitrator Campbell's unreviewed award rather than a decision of a federal court confirming Arbitrator Burns's award, and on August 25 we issued a writ of mandamus requiring the district court to ensure that USA Wrestling implemented the Burns Award "immediately and unconditionally." Lindland v. USA Wrestling Association, Inc., No. 00-3177 (7th Cir. Aug. 25, 2000), slip op. 2. On August 26 USA Wrestling finally complied, but the USOC then refused to accept Lindland as a member of the team, asserting that USA Wrestling's nomination of Lindland was untimely because Sieracki's name already had been sent to the International Olympic Committee (IOC) in Lausanne, Switzerland.

Lindland then returned to the district court, asking it to compel the USOC to send his name to the IOC. Sieracki fought back by asking a different district court (in Denver, Colorado) to confirm the Campbell Award. The district judge in Denver sensibly transferred that request to the

Northern District of Illinois under 28 U.S.C. sec.1404, consolidating all proceedings arising out of the dispute. The Northern District ordered the USOC to request the IOC to substitute Lindland for Sieracki. The USOC has done so, and the IOC has made the substitution. The Northern District also denied Sieracki's petition to confirm the Campbell Award. Two appeals ensued. We expedited the briefing and affirmed both decisions on September 1, promising that this opinion would follow with an explanation.

Although Lindland now is a member of the U.S. team, and the IOC's deadline for making changes has expired, the dispute is not moot. The Games begin at 4 a.m. on September 15 (Chicago time), and the 76 kilogram classification in Greco-Roman wrestling does not get underway until September 24. The IOC accepted a substitution of Lindland for Sieracki after its deadline, remarking that it was willing to make the change because the USOC acted under judicial order. This implies that if we now confirmed the Campbell Award (including its provision annulling the Burns Award) and directed the USOC to substitute Sieracki for Lindland, the IOC would accept that change as well. We therefore address the merits-- starting with what is logically the first issue, whether to confirm the Campbell Award.

Lindland had argued to Arbitrator Burns that USA Wrestling's grievance proceedings were flawed. Arbitrator Burns agreed and ordered the rematch as a remedy in lieu of directing USA Wrestling to reconsider Lindland's protest to the judging of his match with Sieracki. Arbitrator Campbell went over the same ground, disagreeing with Arbitrator Burns about the adequacy of USA Wrestling's processes and adding that, in his view, the result of the first match (which everyone calls "Bout #244") had not been affected by any errors in applying the scoring rules for Greco-Roman wrestling. It is not a surprising view for Arbitrator Campbell to have taken, because the proceedings began amicably. Sieracki initiated the arbitration to defend his initial victory, and USA Wrestling, the respondent, likewise defended both the scoring of the match and the conduct of its internal appeals. (Lindland intervened to defend the Burns Award, but, having already won the rematch, was more interested in preserving that victory than in litigating from scratch.) What is surprising was that Arbitrator Campbell not only approved the result of the original Bout #244 and the adequacy of USA Wrestling's grievance procedures but also directed it to ignore the result of the rematch-- that is, Arbitrator Campbell directed USA Wrestling not to implement the Burns Award.

Sieracki argues that the Campbell Award is no less confirmable under the standards of the Federal Arbitration Act than was the Burns Award, see 9 U.S.C. sec.10, and if he is entitled to confirmation of the Campbell Award then we should set aside the confirmation of the Burns Award (because relief from the Burns Award is part of the Campbell Award). Certainly there is no evidence that the Campbell Award is the result of "corruption," "fraud," "evident partiality," or any similar bar to confirmation. The district court refused to enforce the Campbell Award because the Burns Award had been enforced already, and it read Consolidation Coal Co. v. United Mine Workers, 213 F.3d 404 (7th Cir. 2000), as precluding enforcement of incompatible awards. Only one of these athletes can be on the Olympic Team, and the district judge thought that federal courts should not order the USOC to send both. Sieracki replies that arbitrators need not follow judicial notions of preclusion--a good point about arbitrators, see Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R., 24 F.3d 937 (7th Cir. 1994), but not about judges. Once the Burns Award was confirmed, it was no longer simply the view of a fellow arbitrator with which Campbell could disagree. But this may not be a complete answer. If the Campbell Award is understood to vacate the Burns Award, then confirmation of the Campbell Award logically entails vacating the prior confirmation of the Burns Award. That step would not leave USA Wrestling under conflicting judicial instructions. (Nor is it clear that conflict is an irremediable evil. Injunctions create property rights, which may be altered by private agreements. Bargaining among Sieracki, Lindland, and USA Wrestling could lead to a settlement that would relieve USA Wrestling of any incompatible obligations. See Guido Calabresi & A. Douglas Melamed, Property Rules, Liability Rules, and Inalienability: One View of the Cathedral, 85 Harv. L. Rev. 1088 (1972).)

Definitive resolution of the right way to handle conflicting awards, after one has been confirmed, may await another day. The Campbell Award could not be confirmed even if it were the sole award. It is doubly flawed: first, the entire proceeding appears to have been ultra vires; second, the award violates the Commercial Rules of the American Arbitration Association, under which the proceeding was conducted. 36 U.S.C. sec.220529(b)(2). Because Arbitrator Campbell exceeded his powers, his award cannot be confirmed. 9 U.S.C. sec.10(a)(4).

Sieracki initiated an arbitration not to contest a final decision by USA Wrestling but to protest the Burns Award. Sieracki filed his demand for

arbitration on August 11, two days after the Burns Award and three days before his rematch with Lindland (and thus before any issues associated with that bout could have arisen). The Stevens Act does not authorize arbitration about the propriety of another arbitrator's decision. Section 220529(a) provides:

A party aggrieved by a determination of the corporation under section 220527 or 220528 of this title may obtain review by any regional office of the American Arbitration Association.

What is arbitrable is "a determination of the corporation under section 220527 or 220528 of this title". Arbitrator Burns is not "the corporation" (a term defined in sec.220501 as the USOC, though some of its powers have been delegated to national governing bodies such as USA Wrestling); what is more, neither he nor USA Wrestling (in implementing the Burns Award to the extent of scheduling the rematch) rendered "a determination . . . under section 220527 or 220528 of this title". Section 220528 deals with applications to replace national governing bodies. Section 220527 specifies remedies that athletes have within national governing bodies such as USA Wrestling. Lindland exhausted his remedies within USA Wrestling and obtained "a determination of the corporation under section 220527 . . . of this title", and thus was entitled to arbitrate his grievance. Sieracki, by contrast, did not initiate any proceedings within the scope of sec.220527. Although sec.220527(b)(1) allows athletes to forego exhaustion when time is too short to allow decision, it does not allow bypass of a claim under sec.220527--that is, a contention that a national governing body has failed "to comply with sections 220522, 220524, and 220525 of this title". 36 U.S.C. sec.220527(a). Sieracki did not have such a claim and therefore was not entitled to arbitration under the Stevens Act even if it was proper to pretermit administrative remedies. No other provision of which we are aware supports arbitration whose sole subject is the decision of a prior arbitrator. The Stevens Act would be self-destructive if it authorized such proceedings, which would lead to enduring turmoil (as happened here) and defeat the statute's function of facilitating final resolution of disputes, see sec.220529(d).

Even if the second arbitration had been authorized, however, the outcome would have been forbidden by the rules under which it was conducted. Rule 48 of the AAA's Commercial Rules provides that an "arbitrator is not empowered to redetermine the merits of any claim already decided." Sieracki stresses, as our opinion of

August 24 acknowledged, that judicial ideas about issue and claim preclusion need not apply in arbitration. But arbitrators assuredly are bound by the contracts and other rules that give them power to act. An arbitrator who throws aside those rules and implements his "own brand of industrial justice" oversteps his powers, and the resulting award must be set aside. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); Paperworkers v. Misco, Inc., 484 U.S. 29, 36 (1987). What the Steelworkers Trilogy declared about "industrial justice" is equally true of commercial or athletic justice. Arbitrators are not ombudsmen; they are authorized to resolve disputes under contracts and rules, not to declare how the world should work in the large. Arbitrator Campbell did not misinterpret Rule 48; he decided to ignore it utterly. The whole point of the Campbell proceeding was to redecide the issues that had been before Arbitrator Burns, and the Campbell Award directs USA Wrestling to disregard the Burns Award. Campbell observed, correctly, that Sieracki was not a party to the Burns proceedings, but the other participants in the proceedings before Arbitrator Campbell were parties to the Burns proceedings. By the time Campbell acted, the Burns Award had "already decided" that the nomination to the Olympic Team would depend on a rematch between Sieracki and Lindland. Whatever powers Campbell possessed vis-a-vis Sieracki, he lacked the power to order USA Wrestling to nominate anyone other than the winner of the rematch. The Campbell Award therefore is not entitled to confirmation.

This conclusion makes it unnecessary to decide whether, by participating in the Campbell proceedings, Lindland waived or forfeited his entitlement to the benefits of the Burns Award. The Campbell Award is invalid, so it does not bind Lindland or anyone else. But we shall not conceal our doubt about this argument. The "waiver" to which Sieracki and USA Wrestling point is simply Lindland's assent to the terms of participation in the Olympic Games, one of which is submitting to final and binding arbitration of disputes. How such a document can surrender the final and binding effect of the Burns Award is a mystery. When Sieracki and USA Wrestling entered into their friendly arbitration in an effort to escape from the unwelcome Burns Award, Lindland was in a tough spot. It would not be sensible to say that he waived the benefits of an award already in hand by trying to persuade Arbitrator Campbell to follow his duties under AAA Rule 48 or by attempting to persuade Campbell that Burns acted wisely (and thus to avert the problems that have ensued from Campbell's contrary decision). Nor is it sensible to say, as Sieracki does, that

Lindland won a race to the courthouse. The Campbell Award is invalid, so timing is immaterial. Lindland is entitled to USA Wrestling's nomination because (a) Arbitrator Burns ordered USA Wrestling to hold a rematch, and (b) Lindland won that rematch. If Sieracki had prevailed in the rematch, he would be on the Olympic Team today. Athletic disputes should be settled on the playing field--as the Burns Award provided.

For completeness, we add that none of the parties' arguments persuades us that the order confirming the Burns Award should be reconsidered. Sieracki, USA Wrestling, and the USOC continue to assert that the Burns proceedings were flawed because Sieracki was not a party to them. These submissions ignore the language of the Stevens Act, which provides for arbitration between an aggrieved athlete and the national governing body, not for arbitration among athletes. In arbitration the national governing body, by defending its decision (as USA Wrestling vigorously did), also defends the interests of the winning athlete. Doubtless the constitution or bylaws of the USOC or USA Wrestling could designate as additional parties those athletes potentially affected by the proceedings, but they do not do so. Arbitrator Campbell himself remarked that "customarily in a USOC Article IX arbitration . . . the competing athlete who does not initiate the arbitration . . . is not a participant and is not considered a necessary party by the USOC." If the USOC now favors a different approach, it should change its own rules rather than ask a federal court to disregard an award that was rendered following normal procedures. (Normal outside athletics, too, as our opinion of August 24 observed.)

Lindland and USA Wrestling were the only parties to the Burns proceedings. All the Burns Award (coupled with Lindland's victory in the rematch of Bout #244) requires is that USA Wrestling send Lindland's name to the USOC as USA Wrestling's nominee for the team. By the time USA Wrestling finally complied with the Burns Award--11 days after Lindland won the rematch, and 2 days after we enforced the Burns Award--the deadline for making nominations had passed, and the USOC declared that it would send Sieracki to Sydney. The district court's injunction, the IOC's acceptance of Lindland, and the USOC's appeal followed.

Most of the USOC's submission on appeal misunderstands the basis of the injunction. Consider, for example, the USOC's lengthy argument, based on Michaels v. United States Olympic Committee, 741 F.2d 155 (7th Cir. 1984)

(which interpreted the predecessor to sec.220527), that there is no private right of action to enforce the Stevens Act. That may or may not be so under the current version of the statute; we need not decide, because Lindland did not file suit to enforce the Stevens Act. He sued to enforce the Burns Award, and the Federal Arbitration Act provides the necessary private right of action. The dispositive question is whether the order (and eventually the injunction) entered against USA Wrestling binds the USOC too. This depends on Fed. R. Civ. P. 65(d):

Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

The USOC, as a party to the proceedings to enforce the Burns Award, received actual notice of our decision on August 24 requiring USA Wrestling to nominate Lindland forthwith. USA Wrestling tarried, but the USOC knew what USA Wrestling was required to do and easily could have taken our decision as equivalent to a formal nomination by USA Wrestling on August 24--when it would have been timely under the USOC's rules. The district court's injunction requires the USOC to do what it should and would have done had USA Wrestling timely complied with the decision of August 24. This order is proper if the USOC is a person "in active concert or participation with" USA Wrestling.

  Briefing the "active concert or participation" issue at our instructions, the USOC contends that it is an independent organization, entitled to make the final decision. No one doubts this, but the "active concert or participation" clause supposes legal distinctiveness; if USA Wrestling and the USOC were the same party, the order would be binding directly. The "active concert or participation" clause is designed to prevent what may well have happened here: the addressee of an injunction, eager to avoid its obligations, persuades a friendly third party to take steps that frustrate the injunction's effectiveness. See Reich v. Sea Sprite Boat Co., 50 F.3d 413 (7th Cir. 1995). The USOC has given every indication of willingness to lend a hand. For example, it responded to the initiation of the Campbell proceedings by promising to respect their outcome--which entails a promise to ignore the outcome of the Burns proceedings. The events of August 24 also imply that USA Wrestling and the USOC acted in concert. On the evening of August 24 USA Wrestling sent the USOC one

document "notifying" it of this court's decision and a second document nominating Sieracki. The USOC decided to accept the nomination of Sieracki, knowing full well that this nomination violated a decision of this court. The inference that USA Wrestling and the USOC undertook a joint effort to defeat the Burns Award (and our decision) is very strong.

That inference could be overcome by a demonstration that the USOC had an independent ground of decision. No one doubts that the USOC may adopt its own criteria and make its own selections. 36 U.S.C. sec.220505(c). Thus if, for example, Lindland failed a drug test, or if his behavior at past international competitions had brought shame on the team (as the U.S. Olympic hockey team did en masse in 1998), then the USOC could have sent Sieracki to the Games. Similarly, if the USOC regularly made its own judgments about athletic prowess, then a determination that Sieracki is the wrestler most likely to succeed in Sydney would be respected by the federal judiciary. Yet in response to a question posed by this court (and a similar one posed by the district court), the USOC failed to identify even a single instance in which it has not forwarded to the IOC the nomination of a national governing body such as USA Wrestling. Its promise to send whichever athlete Arbitrator Campbell selected abjures any independent role; indeed, that promise is the best evidence that USA Wrestling and the USOC have acted jointly to implement the Campbell Award despite judicial enforcement of the Burns Award.

When on August 15 it originally sent to the IOC the full list of USA Wrestling's nominees (a list that included Sieracki despite Lindland's victory on August 14), the USOC did not make an independent decision about their athletic skills; instead the certification says that the list (and the USOC's approval) is "based on the selection criteria devised and previously approved by the USOC" and in particular that "[t]he selection of the NGB athlete nominations were [sic] conducted in our estimation according to the policies and procedures approved by the USOC for the 2000 Olympic Summer Games." In other words, the USOC investigated only to ensure that USA Wrestling followed the rules for selecting its nominees. One of these rules (quoted in our August 24 opinion) specifies that the winner of Bout #244 would be USA Wrestling's nominee in the 76 kilogram classification. Lindland is the winner of Bout #244 and the recipient of USA Wrestling's (belated) nomination. Under the USOC's own rules, therefore, Lindland is entitled to the position on the Olympic Team. This makes it very hard to understand the USOC's position as anything other

than a continuation of the view disparaged in our August 24 opinion: a belief by the USOC that athletes who pursue their rights under the Stevens Act should be penalized. The district court was entitled to prevent the USOC from carrying out that view under the pretext that USA Wrestling's nomination of Lindland arrived too late.

Nonetheless, the USOC insists, it is entitled to do as it pleases--defying injunctions to its heart's content--if it manages to stall until only three weeks remain before the Games. For this proposition it relies on another part of the Stevens Act, 36 U.S.C. sec.220509(a):

The corporation shall establish and maintain provisions in its constitution and bylaws for the swift and equitable resolution of disputes involving any of its members and relating to the opportunity of an amateur athlete, coach, trainer, manager, administrator, or official to participate in the Olympic Games, the Paralympic Games, the Pan-American Games, world championship competition, or other protected competition as defined in the constitution and bylaws of the corporation. In any lawsuit relating to the resolution of a dispute involving the opportunity of an amateur athlete to participate in the Olympic Games, the Paralympic Games, or the Pan-American Games, a court shall not grant injunctive relief against the corporation within 21 days before the beginning of such games if the corporation, after consultation with the chair of the Athletes' Advisory Council, has provided a sworn statement in writing executed by an officer of the corporation to such court that its constitution and bylaws cannot provide for the resolution of such dispute prior to the beginning of such games.

Saturday, August 26, was the 21st day before the "beginning" of the Sydney Olympics. The USOC filed in the district court an affidavit parroting the statutory terms and insists that, as a result, the district court was powerless to enforce the Burns Award.

Section 220509(a) is designed to prevent a court from usurping the USOC's powers when time is too short for its own dispute-resolution machinery to do its work. The premise of the USOC's argument is that the dispute among Lindland, Sieracki, and USA Wrestling is one to be resolved by the USOC's internal processes, which can't be done at this late date. This is just another variation of the USOC's misunderstanding about the genesis of the district court's order. Lindland has not asserted a private right of action to enforce the Stevens

Act, nor has he attempted to initiate a new dispute-resolution process before the USOC. His claim depends on the Burns Award, which was issued on August 9, well outside the 21-day window, and the decision of this court, also issued before the 21st day. The only question on the table is whether USA Wrestling and the USOC will comply with obligations that had been established before that three-week period. The USOC's liability stems from its obligation as an entity "in active concert or participation with" USA Wrestling to avoid frustrating the order enforcing the Burns Award.

We do not for one second believe that Congress set out to reward intransigence, so that the USOC can protect scofflaws among the national governing bodies, or itself defy judicial orders if, on the 21st day before the Olympic torch enters the stadium, the President of the USOC is not already in prison for contempt. There is no dispute for the USOC to resolve, so its inability under its constitution and bylaws to act on short notice is not important. All the USOC had to do was implement this court's decision of August 24 (enforcing the Burns Award of August 9); all we hold is that delay in compliance with an obligation judicially articulated before the 21st day does not entitle the USOC to escape that obligation. To put this in the statutory language, the prohibition applies only if "such dispute"--that is, a dispute to be handled under the USOC's procedures--can't be resolved in the time remaining before the games. When no "such dispute" survives into the three-week period (because it had been resolved earlier), sec.220509(a) does not preclude enforcement of the outstanding decision.

Senator Stevens himself may have a different view about the effect of sec.220509(a). At the behest of the USOC, he wrote a letter asking the district judge to vacate its order. Our reading of the letter implies that the USOC misinformed the Senator about the nature of the controversy and the reason the district judge had ordered the USOC to send Lindland's name to the IOC, but no matter. Legislative history is a chancy subject; subsequent legislative history is weaker still, Pierce v. Underwood, 487 U.S. 552, 566-68 (1988); Weinberger v. Rossi, 456 U.S. 25, 35 (1982); Regional Rail Reorganization Act Cases, 419 U.S. 102, 132 (1974), indeed is an oxymoron, see Continental Can Co. v. Chicago Truck Drivers Pension Fund, 916 F.2d 1154, 1157 (7th Cir. 1990), and a letter or affidavit written as a form of constituent service is the bottom of the pecking order. See Bread Political Action Committee v. FEC, 455 U.S. 577, 582 n.3 (1982). Letters written after a statute's enactment were

not presented in the course of debate and so are not the sort of views that may be credible because other members of the legislature rely on them and may impose penalties on those who misrepresent, or misunderstand, the text. Compare William N. Eskridge, Jr., Dynamic Statutory Interpretation 210-38 (1994), and McNollgast, Positive Canons: The Role of Legislative Bargains in Statutory Interpretation, 80 Geo. L.J. 705 (1992), with John F. Manning, Textualism as a Nondelegation Doctrine, 97 Colum. L. Rev. 673 (1997).

A letter from a Member of Congress telling a judge how to decide a pending case reflects a misunderstanding of the difference between legislative and judicial functions. Senator Stevens played a leading role in the creation of sec.220509, but he has no role in adjudication. Giving weight to such a letter would only invite other litigants to pester Members of Congress for expressions of support--or Members of Congress to pester the courts with their latest views about how laws should be implemented and cases decided. It is best, we think, for each institution to hew to its constitutional function. See Bread PAC; Abbott v. Virginia Beach, 879 F.2d 132, 136 (4th Cir. 1989); Environmental Defense Fund, Inc. v. Wheelabrator Technologies, Inc., 725 F. Supp. 758, 769-70 (S.D. N.Y. 1989); Stephen F. Williams, Legislative History and the Problem of Age, 66 Geo. Wash. L. Rev. 1366, 1369 & n.12 (1998).

Affirmed


/* Because the Olympic Games are imminent, No. 00-3220 was submitted for decision by the filing of simultaneous briefs on August 30, and No. 00-3236 was submitted under the same procedure on September 1. Later that day the court affirmed the judgments in both cases, issuing a short order indicating that this opinion would follow.