[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10536
_____

D.C. Docket No. 8:13-cv-02987-JDW-TGW

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL UNION 824,

Plaintiff-Counter Defendant-
Appellee,

versus

VERIZON FLORIDA, LLC,

Defendant-Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 7, 2015)

WILSON and MARTIN, Circuit Judges, and VINSON,[*] District Judge.

VINSON, District Judge:

The primary question in this labor arbitration appeal is an unusual one: did the arbitrator exceed his power by issuing a substituted award after he determined that he had exceeded his power in the original award?  After close review and oral argument, we agree with the district court that he did, and we affirm.

I.

The plaintiff, International Brotherhood of Electrical Workers, Local Union 824 (union), is the bargaining agent for communications technicians employed by the defendant, Verizon Florida, LLC (company).  At all times pertinent, the parties operated under a collective bargaining agreement (CBA) that addressed "bumping rights" in the event of a layoff.  Specifically, Article XI, Section 2, stated that any regular full-time employee with more than twelve months seniority had the right to bump an employee with less seniority, with the following caveat (emphasis added):

> 2.3  An employee must have the *ability* to perform any job which he/she seeks to obtain through bumping.  If it is a job which the employee has *previously held*, the employee will be allowed a reasonable period of time for re-familiarization and, if the job is one which he/she has not previously held, the employee must be able to perform the job with *minimum additional training*.

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

In September 2012, the company announced a surplus that would eliminate positions held by thirteen communications technicians.  To facilitate the bumping process, the company asked the affected employees to fill out a Florida Workforce Reduction Checklist and rank their preferred alternative placements.  The company allowed four of the thirteen to bump into the alternative positions they listed, but the other nine were not allowed to bump.  In particular, the company denied Chris Schwartz, Tom Alexander, Peter Alicea, and Derrick Raborn from bumping into a Customer Zone Technician I (CZT 1) position.

The union subsequently filed a grievance against the company pursuant to the CBA, arguing that the employees were able to perform the jobs at issue.  The grievance alleged as follows:

> **Article(s) Violated:** Article II, Section 1, Paragraph 1.4, Article XI, Section 2 and any other Articles, Sections or Past Practices that may apply.
>
> **Grievance Description:** On Tuesday, February 5, 2013, the Union was notified by the Company that employees currently in the "bumping" process would be denied from "bumping" into another position as the language provides for in the Collective Bargaining Agreement.
>
> **Settlement Desired:** That the Company abide by the language in Article XI, Section 2 and allow employees to "bump" into other positions as negotiated between the parties.

As provided by the CBA, the parties proceeded to a hearing before an arbitrator with the American Arbitration Association (AAA), where they agreed that "[t]he

3

decision of the arbitrator . . . shall be final and binding upon both parties." They refused to stipulate to the issues to be arbitrated, but it is clear that the issue in the grievance was whether the employees had the ability to perform the jobs that they wanted to bump into. Less clear, however, is whether their ability to perform the jobs at issue would be gauged under the "minimum additional training" clause or the job "previously held" clause of Section 2.3.

The company contends that the dispute was presented to the arbitrator under the former and not the latter, while the union argues that both clauses were at issue. Specifically, the union argues that an employee's "ability" to perform the job could be established if he could do the job with "minimum additional training" *or* if he "previously held" that job. Thus, according to the union, arguing to the arbitrator that the employee was able to do the job necessarily encompassed both provisions of Section 2.3. While there was *some* suggestion that both clauses may have been at issue, the record is clear that the arbitration dealt primarily with the "minimum additional training" prong. Indeed, it is undisputed that the union's representative told the arbitrator during his initial statement --- and he made substantially similar statements in his arbitration brief --- that "[h]aving the ability [to perform the job]

and the three little words 'minimum additional training' within Section 2.3 are the crux of this entire proceeding."[1]

The arbitrator entered his original award on August 26, 2013. He found that the phrase "minimum additional training" meant training of less than four weeks in duration, and he appears to have agreed with the company that all of the employees under review would require more than that amount of training.[2] To that extent, the arbitrator determined that "the Company properly declined to allow them to bump into those positions." However, he further found that Schwartz and Alexander had in the past been "on loan" by management to the jobs at issue, so they "previously held" those positions. Thus, he sustained the grievance with respect to Schwartz's and Alexander's bumping rights.

On August 28, 2013, the union sent a letter to the arbitrator, requesting what it described as a "clarification" of the award. The arbitrator interpreted this request as being made under Section 682.10 of the Florida Statutes, which provides, *inter alia*, that an arbitrator may "clarify" his award if either party asks for it. The union maintained that two additional employees, Alicea and Raborn, had also previously

---

[1] Counsel for the union "admitted" during oral argument in this case: "The union representative arguing at the arbitration did, in his opening statement and in the opening statement of his brief, emphasize the 'minimum additional training' [language] . . . to the exclusion of the 'previously held' language."

[2] We say it "appears" the arbitrator found that all the employees required more than four weeks of training because, although he intimated that it was not necessary to address the training issue for *certain* of the employees, his substituted order, discussed *infra*, indicates that he had, in fact, already decided the "minimum additional training" question for *all* of them.

5

been "on loan" by management, and, thus, under the logic of the original award, it asked if they should have been awarded the CZT 1 position as well.[3]  By email on Friday, September 6, 2013, the company opposed the request for clarification on the ground that Alicea and Raborn "did not hold the position the Union now seeks to have the Arbitrator award them."  Significantly, the company went further and asked for a "reconsideration of the entire award," arguing that whether *any* of the employees had "previously held" the position was not an issue properly before the arbitrator.  Instead, the company argued, the only task that the arbitrator had been called on to perform was to interpret the "minimum additional training" language.

The arbitrator agreed with the company and issued his substituted award on Monday, September 9, 2013, finding that "[u]pon review and deliberation, [I am] persuaded that [my] earlier award did, in fact, partially rely on a contract provision not submitted for consideration."[4]  The arbitrator wrote that the original award was "subject to change" pursuant to Section 682.13(1)(d) of the Florida Statutes, which states: "Upon motion of a party to an arbitration proceeding, the court shall vacate

---

[3] Specifically, the union asked: "If the Union is correct in the understanding of the Award, we are respectfully asking if Mr. Alicea and Mr. Raborn should have been awarded a CZT 1 position (by seniority) that was listed on their Florida Workforce Reduction Checklist?"

[4] The arbitrator did not allow the union an adequate opportunity to respond to the company's request for reconsideration as he issued the substituted award three calendar days (one business day) after the company made the request via email.  Although this was error --- and counsel for the company seemed to acknowledge as much during oral argument when he suggested that this case could be remanded to the arbitrator so he could give the union an opportunity to prepare its response now --- we do not base our decision on that error.

6

an arbitration award if . . . [the] arbitrator exceeded the arbitrator's powers."  The substituted award deleted by strike-through the entire "previously held" analysis (but was otherwise the same as the original award), and it proceeded to deny the union's grievance as to all of the affected employees as they would each require more than four weeks training.

The union brought this action in federal district court to confirm the original award and vacate the substituted award.  On cross motions for summary judgment, the court ruled in favor of the union.  The district court held that the original award fell within the arbitrator's power based on the union's "broadly worded" grievance. The court further held that the arbitrator had exceeded the scope of his power by issuing the substituted award in violation of *functus officio*.  This common law rule (meaning "task performed") provides that, while an arbitrator may correct clerical, typographical, or computational errors in a final award, he has no power to revisit the merits of the award after it has issued.  *See, e.g.*, *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1270-71 & n.4 (10th Cir. 1999) (*Functus officio* provides that, "once an arbitrator has issued a final award and thus discharged his or her office, that arbitrator lacks any continuing power to revise the award or issue a new one."); *see also McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 & n.1 (9th Cir. 1982).  It is from this order that the company now appeals.

II.

We will review a district court's decision to confirm or vacate an arbitration award *de novo*. *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1283 (11th Cir. 2014). In light of the very strong federal policy in favor of finality for arbitration awards, the arbitrator's decision is entitled to "considerable deference." *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1263 (11th Cir. 1996). As this court has recognized:

> "[c]ourts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."

*Id.* (quoting *United Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371, 98 L. Ed. 2d 286 (1987)); *Delta Air Lines v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 670 (11th Cir. 1988) ("An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference."). Stated simply, our review is limited to whether the arbitration award is irrational; whether it fails to draw its essence from the parties' contractual CBA; or, as in this case, whether it exceeds the scope of the

8

arbitrator's power and authority. *IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union*, 171 F.3d 1322, 1325 (11th Cir. 1999).

III.

Preliminarily, the company argues that the district court erred in concluding that the original award fell within the scope of the arbitrator's power.

The arbitrator's authority is established in the CBA, which provides that the arbitrator shall be limited "to a review and determination of the specific grievance submitted for arbitration." The company concedes (as it must) that the arbitrator's authority derives from the grievance. And it further concedes (at least impliedly) that the grievance was indeed "broadly worded," as the district court recognized. However, the company contends that the original award exceeded the arbitrator's authority because the case itself was not "broadly arbitrated," and "[t]he record is amazingly clear that [the 'previously held' language] was not at issue in this case." While the company's description of the arbitration proceeding has support in the record, reversal is not warranted on this ground.

It is true that an arbitrator is "not free to reinterpret the parties' dispute and frame it in his own terms." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d

580, 585 (5th Cir. 1980).[5]  And it is likewise true that a majority of the arbitration (the "crux" of it, in the union's own words) focused exclusively on the "minimum additional training" language in Section 2.3.  Nevertheless, where --- as here --- the parties refuse to stipulate to the issues at arbitration, the arbitrator is "empowered" to frame and decide all the issues in the grievance *as he sees them.  See id.* at 584.  The arbitrator in this case initially interpreted the grievance broadly and construed it as reaching the "previously held" language.  It is generally "for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties." *See Waverly Mineral Prods. Co. v. United Steelworkers of America, AFL-CIO, Local No. 8290*, 633 F.2d 682, 685 (5th Cir. 1980).  And, as previously indicated, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'"  *Osram Sylvania Inc.*, 87 F.3d at 1263 (citation omitted).  Thus, while reasonable people might disagree (as the parties do) about whether the "previously held" clause was an issue during the arbitration proceeding, it was ultimately for the arbitrator to decide what issues were put before him, and his decision must be affirmed if he was "even arguably" acting within the scope of his power.  We agree with the district court that he was.

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all Fifth Circuit decisions that were rendered before October 1, 1981.

However, this case is unique inasmuch as the arbitrator was subsequently persuaded that he had exceeded the scope of his authority in the original award, so he issued the substituted award. The question then becomes: could he do that? Or rather, as stated at the outset of this opinion, did he exceed his authority by finding that he had exceeded his authority? The company maintains that he did not exceed his authority for three reasons.

First, the company contends that the arbitrator was free to revisit and revise his original award because it was not final in that it did not adjudicate the "limited issue" that had been raised in the grievance, specifically, the "minimum additional training" issue. The record clearly shows otherwise. As the district court found, and as detailed above, the arbitrator's original award resolved the grievance on the merits --- including the "minimum additional training" issue for all of the affected employees --- and it concluded by specifying a remedy. The arbitrator applied the contractual language of the CBA. There is no evidence suggesting that he did not deal completely with the grievance as it was submitted to him, or that the original award was intended to be anything other than final.[6]

---

[6] In describing the company's argument on this point as "very disingenuous," the union points out that the arbitrator did not *add* any new discussion to the substituted award that rendered it more final than the original award; he simply *deleted* all the "previously held" analysis.

11

The company next contends that the district court should not have applied

*functus officio* as it is of "questionable" viability in the labor arbitration context.[7]

We recognize that some courts have been critical of the doctrine and have opined

that an arbitrator *should* have the inherent power to reconsider his award within a

reasonable period of time.  *See Glass, Molders, Pottery, Plastics & Allied Workers*

*Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844,

846-48 (7th Cir. 1995).  Nevertheless, it has never been abrogated by any court of

which we have been made aware.[8]  It is not necessary for us to wade too deeply

into the company's various challenges to *functus officio* or analyze the continued

viability of this common law rule because it is codified in Rule 40 of the AAA

Labor Arbitration Rules, which was incorporated into the CBA by virtue of the

parties' agreement to submit to AAA arbitration.  *See, e.g.*, *Idea Nuova, Inc. v. GM*

*Licensing Grp., Inc.*, 617 F.3d 177, 181 (2d Cir. 2010) ("We thus conclude that

when, as here, parties expressly agree to submit their . . . dispute[] 'to AAA

arbitration for resolution,' such language is reasonably understood, without more,

---

[7] The company further argues that *functus officio* is "riddled with exceptions," and, to the extent the doctrine is still viable in the arbitration context, one of those exceptions applies --- namely, the exception for non-final awards.  *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (recognizing that *functus officio* does not prevent arbitrator from revisiting an award that does not finally adjudicate the issue that was submitted).  As just discussed in the text, however, we reject the argument that the original award did not constitute a final adjudication.

[8] When asked at oral argument, counsel for the company admitted "in all candor" that no court has ever abrogated the rule.

to agree to arbitration pursuant to AAA rules and to the incorporation of those

rules into the parties' agreement.") (citation omitted).[9]

Rule 40 provides (emphasis added):

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, technical, or computational errors in the award. *The arbitrator is not empowered to redetermine the merits of any claim already decided.* The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

"This rule essentially codifies the common law doctrine of *functus officio*." *See*

*Bosack v. Soward*, 586 F.3d 1096, 1103 (9th Cir. 2009) (concluding same about

AAA Commercial Arbitration Rule 46, which is identical to Rule 40 in all relevant

aspects). Therefore, regardless of the viability (or advisability) of *functus officio* as

a matter of common law, Rule 40 operated in precisely the same manner and

precluded the arbitrator here from revisiting the merits of the original award after it

was issued. *Cf. Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1004 (7th

---

[9] The union argued in district court that the substituted award violated both *functus officio* and Rule 40. The district court ultimately based its decision on *functus officio* and stated that it need not discuss Rule 40, but it noted that "Rule 40 is generally consistent with the doctrine of *functus officio* . . . ." As will be seen, Rule 40 and *functus officio* are indeed consistent with one another, and, as applied to the facts of this case, have the same effect. We emphasize that our decision is based on Rule 40, and we reserve judgment for another day on the viability or precise contours of *functus officio* as an independent, common law doctrine in this circuit.

13

Cir. 2000) (noting that arbitrators "assuredly are bound by the . . . rules that give them power to act," and declining to confirm a second arbitration award that was entered by a separate arbitrator in violation of AAA Commercial Rule 48, which is, in pertinent part, identical to Rule 40).[10]

Third and lastly, the company maintains that the arbitrator had the authority to revisit his original award and issue a substituted award --- irrespective of *functus officio* and/or Rule 40 --- because the union *asked* him to reconsider, after which the company made its own request for reconsideration. The company thus argues that the union essentially "opened the door" and that the arbitrator had the power to revisit the award because the parties "mutually consented" to reconsideration. This is a closer question.[11]

---

[10] Our research has not uncovered any circuit case law applying Rule 40, but, as indicated above, courts have considered and applied virtually identical AAA rules. These cases, and the plain language of the rule, are clear: an arbitrator cannot revisit the merits of an award after it has issued. Notably, the company does not appear to dispute that the AAA rules --- including Rule 40 --- applied to the arbitration here. (In fact, it barely mentioned Rule 40 in its briefing and at oral argument, even though it was discussed in the district court, mentioned in that court's summary judgment order, and argued by the union on this appeal.) Rather, as will be seen next, it simply argues that Rule 40 did not preclude the arbitrator from issuing a substituted award on the facts of this particular case because the parties implicitly waived it.

[11] The union claims it only asked the arbitrator to clarify (not reconsider) his initial ruling. The company insists that is "just a matter of semantics." We note that requests for clarification are very common in the arbitration context. *See* Fla. Stat. § 682.10(1) ("On motion to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award: . . . (c) To clarify the award."); *see also, e.g.*, *Eastern Seaboard Constr. Co., Inc. v. Gray Constr., Inc.*, 553 F.3d 1, 5 (1st Cir. 2008) ("'Where the award, though seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.'") (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967), and collecting multiple cases); *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing*

14

As a general matter, we agree that, since arbitration is a matter of contract, the contracting parties can ask an arbitrator to clarify or reconsider his decision if they mutually agree. It is a practical and common sense way to correct an award, and it appears to be frequently utilized. *See, e.g.*, *Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999) (arbitrator can reconsider final award if there is "agreement by the parties"); *Excelsior Foundry Co.*, 56 F.3d at 848 (*Functus officio* "is merely a default rule, operative if the parties fail to provide otherwise"; but, if the parties do provide otherwise, "[t]here is no legal bar to authorizing arbitrators to reconsider their decisions"); *accord Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999) (arbitrator can make "changes" to final award "when the parties consent"); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 333 n.5 (3d Cir. 1991) (noting that arbitrator can clarify a final award "upon the mutual assent of the parties"). The question here is: *did* the parties mutually consent? We think not.

The union's request --- which was essentially comprised of a single question --- was narrowly framed. Notably, it did not challenge the arbitrator's reasoning or his substantive analysis in any way; it merely inquired about his *application* of that reasoning and analysis to the factual record. Specifically, the union asked whether,

---

*Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir. 1993) (stating that where the parties cannot agree on the interpretation of an arbitration award, "the normal course of action is to treat the award as ambiguous or incomplete" and allow the arbitrator to clarify). On the facts of this case, we need not resolve whether the union requested clarification or reconsideration because, although close, the company's "mutual consent" argument fails regardless of how the request is characterized.

15

*under the logic of the ruling as the union understood it*, Alicea and Raborn should have been offered a CZT 1 position like Schwartz and Alexander had been. While one could argue that this was a request for "reconsideration" in that the arbitrator previously found (at least by implication) that Alicea and Raborn should not have been awarded the job, the union's request bore no resemblance to the company's request. The company's request was a full-frontal attack on the merits. Over the course of several single-spaced pages, it disputed and challenged the arbitrator's reasoning and analysis, and it specifically asked for "reconsideration of the entire award." The company and union sought very different relief, and they cannot be fairly characterized as "mutual" requests for clarification or reconsideration.

The cases that the company has cited are not to the contrary. For example, in *Brown v. Witco Corp.*, 340 F.3d 209 (5th Cir. 2003), the arbitrator ordered that an employee, Glenn Brown, be reinstated with full back pay. When the company and union could not agree on how to calculate the amount of back pay, the parties "*voluntarily* requested that the arbitrator clarify" his ruling, which he did. *Id.* at 211-13, 217 (emphasis in original). Brown was not pleased with the clarification, and he filed suit. *Id.* at 213. In rejecting Brown's argument that the clarification violated *functus officio*, the Fifth Circuit held that the arbitrator had "jurisdiction to clarify what he originally intended to award Brown in the light of the specific issues and ambiguities raised by both parties post-arbitration." *See id.* at 217-19 &

16

n.10.  The Court of Appeals further stated that the requests for clarification gave the arbitrator power and authority to "interpret or construe" the original award. *See id.*  There is a considerable difference between the requests to clarify in *Brown* (which clearly were mutual), and the requests at issue in this case (which clearly were not).  Furthermore, the arbitrator here did not simply "interpret or construe" his original award; he deleted the entire "previously held" discussion which favored the union, while leaving only the "minimum additional training" portion which favored the company.  Thus, he substantively changed and revised his decision's analysis and ruling entirely.

   *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010) is also undercut by its factual differences.  The parties to the arbitration in that case not only both petitioned the arbitrator to "amend" his initial ruling, but they did so pursuant to an AAA arbitration rule (International Centre of Dispute Resolution (ICDR) Article 30(1)) that authorized such action.  *See id.* at 333-36.  Since the arbitrator was "empowered" by the rule to revise his award in the manner that he did --- and the parties had "displayed clear and unmistakable intent" to have him do so --- the Second Circuit held that *functus officio* did not bar the arbitrator from changing the original award.  *Id.* at 342-46; *see also id.* at 347 ("Because we conclude that the arbitrator did not exceed his powers by revising the Original Award in a way consistent with his interpretation of his reconsideration authority

under ICDR Article 30(1), we reverse the district court's decision to vacate the Amended Award on [*functus officio*] grounds."). The parties here did not "clearly and unmistakably" ask the arbitrator to reconsider his original award; and, perhaps more significantly, there was no rule that "empowered" him to do what he did. If anything, Rule 40 said he could not. *See Brown*, 340 F.3d at 219 (explaining that an arbitrator can revisit a final award if he is asked "mutually and without any party's objection within a reasonable period of time," but that is "in the absence of any . . . *formal arbitration rule expressly to the contrary*" (emphasis added)); *cf. Lindland*, 227 F.3d at 1004 (observing that arbitrators are bound by the rules "that give them power to act," and refusing to confirm a second award that was entered by another arbitrator because he "did not misinterpret Rule 48 [which is virtually identical to Rule 40]; he decided to ignore it utterly").[12]

## IV.

In summary, "it was for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties." *Waverly*, 633 F.2d at 685. And the

---

[12] We note that the arbitrator here did not discuss or cite Rule 40 in the substituted award (as in *Lindland*, he appears to have "decided to ignore it utterly"). Nor did he suggest that the parties' "mutual" request gave him the authority to revise the original award. Rather, he cited a Florida statute that authorizes "*the court*" to vacate an award if an arbitrator exceeds his power. *See* Fla. Stat. § 682.13(1)(d) (emphasis added). It thus appears that the arbitrator was persuaded that he had erred in applying the "previously held" clause (and assumed that he might later be reversed by "the court"), so he acted preemptively and reversed himself (even though, incidentally, we have determined that he did *not* commit any reversible error in his original award). In any event, given the strong policy in favor of finality for arbitration awards --- which is supported by both the common law *functus officio* and Rule 40 --- he was not authorized to revisit his decision and enter the substituted award on the facts presented here.

18

arbitrator here decided --- at least initially --- that the issue submitted included both the "minimal additional training" and the "previously held" language in the CBA. While the arbitrator was later persuaded that this was error, Rule 40 precluded him from making that determination and issuing the substituted award. Accordingly, the decision below is

**AFFIRMED**.