**COLONIAL COURTS APARTMENT COMPANY, et al., Plaintiffs, Appellants,**

v.

**PROC ASSOCIATES, INC., et al., Defendants, Appellees.**

No. 94–2106.

United States Court of Appeals, First Circuit.

Heard May 3, 1995.

Decided June 21, 1995.

Joseph V. Cavanagh, Jr., with whom Michael DiBiase and Blish & Cavanagh, Providence, were on brief, for appellants.

Richard W. MacAdams with whom MacAdams & Wieck Incorporated, Providence, was on brief, for appellees.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

This case requires us to determine whether letter-of-credit beneficiaries may recover the value of the letters from the issuer's customer or the customer's guarantors after the issuer dishonored the letters and became insolvent. Interpreting applicable law and the various agreements between the parties, we conclude that the beneficiaries may not so recover. Thus, we affirm the district court's grant of summary judgment for defendants-appellees.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Resolving the issues in this case requires a detailed recital of its somewhat complex factual background. The magistrate's report is exceptionally helpful in delineating the facts and we draw from it liberally.

Plaintiffs-appellants are four individuals and two Ohio general partnerships (collectively, "appellants") who owned, or whose assignors owned, three apartment complexes in East Cleveland, Ohio. Appellants sold the apartments to defendant-appellee Proc Associates, Inc. ("Proc Associates"),[1] which in turn assigned its interest as purchaser to Euclid Properties ("Euclid"), an Ohio limited partnership.[2]

Euclid paid $2.2 million in cash for the properties. To cover the remainder of the purchase price, Euclid executed four promissory notes ("promissory notes") totalling $1.3 million. As sole security for the promissory notes, the Marquette Credit Union ("Mar-

quette") issued to appellants four irrevocable standby letters of credit ("letters of credit") corresponding to each of the promissory notes. By their terms, the letters of credit expired on May 31, 1991.

Before issuing the letters of credit, Marquette entered into a reimbursement arrangement with Proc Associates and the Procacciantis memorialized in a commitment letter ("commitment letter") dated March 16, 1990, a letter agreement ("letter agreement") dated May 31, 1990, and a guaranty agreement ("guaranty") also dated May 31, 1990, (collectively, "reimbursement agreements"). In essence, the reimbursement agreements provided that Proc Associates would repay Marquette for amounts drawn on the letters of credit. Further, the Procacciantis agreed to guaranty Proc Associates' obligation to Marquette. As additional security for the obligations assumed by the credit union as a result of its issuance of the letters of credit, Marquette also obtained a second mortgage on real property owned by Euclid.

On January 1, 1991, the Rhode Island governor closed Marquette because the deposit insurer for Marquette had failed and Marquette did not have federal insurance. On May 17, 1991, Maurice C. Paradis was appointed as permanent receiver ("receiver") for Marquette.

On April 30, 1991, Euclid failed in its obligation to renew or replace the letters of credit.[3] On May 21 and 29, 1991, appellants presented the letters of credit with all required documents to the receiver for payment. Appellants did not consent to an extension of time to honor the letters. Dishonor occurred.

During the remainder of 1991, appellants pursued their claims against Marquette in three separate actions. First, in an Ohio

---

1. Defendant-appellee Armand Procaccianti is a director and president of Proc Associates. Defendant-appellee James Procaccianti is a director, vice president, and treasurer of Proc Associates. Hereinafter, we refer to Armand and James Procaccianti collectively as "the Procacciantis."

2. Euclid is constituted of limited partners defendant James Procaccianti (95% interest) and defendant Armand Procaccianti (4% interest) and general partner East Cleveland Properties, Inc.,

an Ohio corporation. James Procaccianti is president, secretary, and treasurer of East Cleveland Properties, Inc.

3. Default occurred under the promissory notes upon failure by Euclid to renew or replace the lapsed letters of credit by April 30, 1991. Additionally, each of the letters of credit themselves provided for presentment for payment if there was no renewal by April 30, 1991.

state court, appellants sought assignment of the collateral held by Marquette and the receiver under the letters of credit, damages against Marquette and the receiver for wrongful dishonor, and injunctive relief. Second, in the U.S. District Court for Rhode Island, appellants sought to enjoin the distribution of assets by Marquette and the receiver pursuant to the priority scheme set forth in the Depositors Economic Protection Act of 1991 ("DEPCO"), the Rhode Island legislation enacted in the aftermath of that state's credit union insurance crisis. Third, in the receivership proceedings pending in Rhode Island state court, appellants filed proofs of claim for the amount owed under the letters of credit and for a preference as to the collateral held by Marquette or the receiver.

On July 2, 1992, appellants and the receiver entered into a written settlement agreement ("settlement"), the terms of which provided that appellants would dismiss the three pending proceedings in Ohio and Rhode Island in exchange for $500,000 and the assignment ("assignment") by the receiver of his interest in the letter agreement, the commitment letter, the guaranty, and the mortgage, including any claims of the receiver against the defendants under those instruments. By its terms, payment under the settlement "shall not be deemed to or constitute a payment under or by virtue of the [l]etters of [c]redit." On July 31, 1991, Marquette became insolvent.

Appellants then brought the present action against Proc Associates and the Procacciantis for the value of the letters of credit. Appellants set forth, in separate counts, three theories of recovery. First, appellants argued that, as Marquette's assignees, they could recover from defendants pursuant to the reimbursement agreements. Second, appellants contended that, under R.I.Gen.Laws § 6A–5–117,[4] which codifies Section 5–117 of the Uniform Commercial Code, they were entitled to realize on the collateral held by Marquette and the receiver. Third, appellants argued that they were entitled to recover under general equitable principles. De-

fendants moved for summary judgment. Considering only recovery under the first theory, dealing with the reimbursement agreements, the magistrate judge determined that appellants could not recover from defendant Proc Associates, but that they could from the Procacciantis. Deeming the remaining two theories subsumed by his analysis, the magistrate did not reach those arguments. Following objection from defendants, the district court remanded the report and recommendation to the magistrate. The magistrate stood by his original recommendation. Upon review, the district court found no liability attached to the Procacciantis under the terms of the guaranty and rejected that portion of the magistrate's report as to their liability. Judgment entered for defendants on all counts. This appeal followed.

## II.

### DISCUSSION

After reciting the standard of review, we take up each of appellants' three theories of recovery.

### A. Standard of Review

■ Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a grant of summary judgment de novo. See, e.g., Inn Foods, Inc. v. Equitable Coop. Bank, 45 F.3d 594, 596 (1st Cir.1995). We review the record in the light most favorable to the nonmoving party, and we indulge all reasonable inferences in that party's favor. Id.

### B. The Reimbursement Agreements

On appeal, appellants argue that the terms of the reimbursement agreements render the Procacciantis liable to Marquette. Specifically, appellants contend that, under the language of the guaranty, liability attached to the Procacciantis on June 3, 1991, when Marquette was required to make full payment

---

4. The parties do not dispute that, in this diversity-based action, the substantive law of Rhode Island governs.

under the letters of credit. Thus, appellants argue that, under the terms of the assignment, they are entitled to recover the $1.3 million represented by the letters of credit. Because appellants' theory misconstrues the nature of a letter-of-credit transaction and is inconsistent with the operative language of the parties' agreements, we do not agree.

To put this case in proper perspective, we start with general principles. Letter-of-credit transactions are three-party arrangements involving two parties to a commercial transaction and a financial institution. The financial institution, which is the issuer (here, Marquette), at the direction of its customer, usually the buyer (here, defendant Euclid), issues a letter of credit to a beneficiary or beneficiaries, usually the seller (here, appellants). The principal purpose of a standby letter of credit is a means for the beneficiary-seller to ensure that if there is a default on the underlying contract between it and the customer-buyer, then the beneficiary-seller will have a ready source of funds to satisfy the debt owed. *See, e.g., Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir.1990). Thus, the standby letter of credit acts as a "back up" against customer default on obligations of all kinds. James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–2, at 809 (3d ed. 1988) (hereinafter, "White & Summers"). Additionally, the beneficiary may request a letter of credit to ensure that should any contractual dispute arise, it will " 'wend [its] way toward resolution with the money in [the beneficiary's] pocket, rather than in the pocket' of his adversary." *Ground Air*, 899 F.2d at 1272 (quoting *Itek Corp. v. First Nat'l Bank of Boston*, 730 F.2d 19, 24 (1st Cir.1984)).

To effect these commercial purposes, courts have considered the letter of credit to be a separate agreement between the issuer and the beneficiary, wholly distinct from the underlying contract between the customer and the beneficiary. *Id.; see also* U.C.C. § 5–114, comment 1 ("The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the benefi-

ciary."); White & Summers, § 19–2, at 812 ("The most unique and mysterious part of this [letter-of-credit] arrangement is the socalled 'independence principle.' The principle states that the bank's obligation to the beneficiary is *independent* of the beneficiary's performance on the underlying contract."). Similarly, "the obligation of the issuer to pay the beneficiary is also independent of any obligation of the customer to its issuer." White & Summers, § 19–2, at 811. Thus, as with other letter-of-credit arrangements, *see id.* at 812, the one in this case involves two contracts (the underlying purchase-and-sale agreement between Proc Associates and appellants and the reimbursement arrangement between Proc Associates and Marquette) and one letter of credit.

At the center of this dispute is the operative language of the letter agreement and the commitment letter, as guaranteed by the Procacciantis, which establish Marquette's right to reimbursement. The letter agreement states: "that if at any time prior to the expiration of [the] [l]etters of [c]redit, [Marquette] is required to make payment," Proc Associates must repay Marquette pursuant to the commitment letter. The commitment letter specified that "if the [l]etter of [c]redit is drawn upon," then Proc Associates must make to Marquette certain interest payments and, further, "final payment of all outstanding principal and all interest payable three years from the date of the issuance of the [l]etter of [c]redit." In addition, the Procacciantis guaranteed Proc Associates' obligation. The guaranty provides that the Procacciantis "guarantee[ ] to Lender [Marquette] . . . the punctual payment, . . . as and when due (whether by acceleration or otherwise) of all [o]bligations requiring payment." The term "obligations" is defined as:

all indebtedness, obligations and liabilities of Borrower [Proc Associates] to Lender [Marquette] of every kind and description (including without limitation any and all of the foregoing arising in connection with any letters of credit issued by Lender for the account of Borrower), direct or indirect, secured or unsecured, joint or several, absolute or contingent, due or to become due, whether for payment or perfor-

mance, now existing or hereafter arising, regardless of how the same arise or by what instrument, agreement or book account they may be evidenced, or whether evidenced by any instrument, agreement or book account; including without limitation, all loans (including any loan by renewal or extension), all indebtedness, all undertakings to take or refrain from taking any action, all indebtedness, liabilities or obligations owing from Borrower to others which Lender may have obtained by purchase negotiation, discount, assignment or otherwise, and all interest, taxes, fees, charges, expenses and attorneys' fees chargeable to Borrower or incurred by Lender in connection with any transaction between Borrower and Lender.

The parties do not dispute that appellants properly presented the letters of credit to Marquette for payment, that payment became due on June 3, 1991, and that dishonor occurred when no payment was made. As noted above, appellants argue that Marquette's nonpayment notwithstanding, the Procacciantis' obligation under the guaranty was triggered on June 3, 1991. Specifically, they point to the language defining "obligations" under the guaranty, arguing that it is so broad as to render the Procacciantis liable when the $1.3 million payment on the letters of credit came due.

■■■■ Appellants' argument misconceives the nature of the letter-of-credit obligation. As our discussion above makes clear, applicable commercial law provides that the letter-of-credit obligation is that of the issuer alone, and that obligation is independent of either the underlying contract or any reimbursement agreement. Upon proper presentment, the liability ran to Marquette and not to Proc Associates. Thus, proper presentment did not create, under the language of the guaranty, "indebtedness, obligations and liabilities of *Borrower to Lender* of every kind and description.... direct or indirect, secured or

unsecured, joint or several, absolute or contingent, due or to become due, whether for payment or performance, now existing or hereafter arising" (emphasis added).

■■■■ The agreements between Marquette, Proc Associates, and the Procacciantis did not alter the basic legal relationships in a letter-of-credit transaction. When the language of a contract is clear and unambiguous, we accord the language its plain and natural meaning. *In re Newport Plaza Associates*, 985 F.2d 640, 645 (1st Cir.1993) (citing *Dudzik v. Leesona Corp.*, 473 A.2d 762, 765 (R.I.1984)). Under the letter agreement, Proc Associates (the Borrower) became obligated to Marquette (the Lender) when Marquette was required to make payment and, under the commitment letter, when the letters of credit were actually drawn upon. Because both conditions did not obtain, Proc Associates incurred no "indebtedness, obligations and liabilities" to Marquette. Consequently, there being no "obligations [of Proc Associates] requiring payment," there was nothing for the Procacciantis to guaranty. Thus, as Marquette's assignee under the settlement, appellants accede to no enforceable rights against the Procacciantis.[5]

■■■■ Because of the unusual (and for appellants, unfortunate) turn of events, appellants essentially seek to convert the Procacciantis' guaranty of Proc Associates' obligations into a guaranty of Marquette's obligations. However, neither the law nor the language of the reimbursement agreements sustain such an interpretation. Thus, we conclude that the district court properly granted summary judgment as to all defendants on count one.

## C. U.C.C. § 5–117

■■■■ Appellants next argue that, pursuant to R.I.Gen.L. § 6A–5–117 (codifying U.C.C. § 5–117),[6] they are entitled to collat-

5. We note that, under the terms of the settlement, the $500,000 payment by the receiver to appellants does not constitute a payment under the letters of credit. At oral argument it was suggested that this language was included because the settlement resolved three separate lawsuits involving issues not related to the letters of credit.

6. In relevant part, § 6A–5–117 provides:

(1) Where an issuer ... becomes insolvent before final payment under the [letter of] credit ... the receipt or allocation of funds or collateral to secure or meet obligations under the [letter of] credit shall have the following results:

eral held by Marquette and the receiver. The "collateral" that appellants seek to realize on are the letter agreement, the commitment letter, and the guaranty.[7] Assuming that these agreements constitute collateral within the meaning of section 5–117—a point disputed by defendants—we fail to see how its acquisition by appellants advances their cause. As the foregoing discussion outlines in detail, under the provisions of the settlement, Marquette assigned its rights under these documents to appellants. However, the terms of the settlement and the facts of the case render those rights inoperative against defendants. Nothing in section 5–117—which operates to segregate an insolvent institution's letter-of-credit liabilities and security from depositor liabilities and assets, see R.I.Gen.L. § 6A–5–117, official comment—enhances appellants rights vis-a-vis defendants. At most, appellants would accede to rights already acquired under the terms of the settlement. Therefore, we conclude that the district court properly granted summary judgment as to count two.

### D. General Equitable Principles

■ Finally, appellants invite us to employ "equitable principles" on their behalf. Appellants rely on authority that is neither controlling nor even remotely analogous to the facts in this case. Appellants also vaguely assert that denying them recovery would result in unjust enrichment. From our review of the record, it is not at all apparent that the balance of equities leans in appellants' favor. After all, upon dishonor, appellants had an enforceable right against Marquette. R.I.Gen.L. §§ 6A–5–114(1), 6A–5–115(1). They chose to reduce that right, along with other claims asserted in the three

suits, to a lump-sum payment of $500,000 plus assignment of Marquette's rights against defendants. Those rights proved to be of no value. And, for reasons not immediately apparent but in any event beyond the scope of the present case, appellants also agreed to language foreclosing their right to recover—as Marquette's assignee—the $500,000 settlement payment.

Appellants may have entered into an ill-considered agreement that indirectly reduced defendants' liability, but that does not constitute unjust enrichment, see R & B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355–56 (R.I.1984) (setting forth elements of unjust enrichment), and we know of no equitable principle that would operate to displace applicable law and the parties' agreements. Accordingly, the district court properly granted summary judgment as to count three of appellants' complaint.

### III.

### CONCLUSION

For the forgoing reasons, the decision of the district court is ***affirmed.***

(a) To the extent of any funds or collateral turned over after or before the insolvency as indemnity against or specifically for the purpose of payment of drafts or demands for payment drawn under the designated credit, the drafts or demands are entitled to payment in preference over depositors or other general creditors of the issuer or bank; and
(b) On expiration of the credit or surrender of the beneficiary's rights under it unused any person who has given such funds or collateral is similarly entitled to return thereof; and

(c) A charge to a general or current account with a bank if specifically consented to for the purpose of indemnity against or payment of drafts or demands for payment drawn under the designated credit falls under the same rules as if the funds had been drawn out in cash and then turned over with specific instructions.

7. As noted above, a mortgage was also given as collateral. However, appellants concede that, because the receiver effectively assigned his interest in the mortgage, it is not relevant to this case.