United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 23, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-30508
_____

GLENN BROWN,

Plaintiff - Appellant,

PAPER, ALLIED-INDUSTRIAL, CHEMICAL AND ENERGY WORKERS
INTERNATIONAL UNION, AFL-CIO, CLC Local Union 4-447,

Intervenor - Appellant,

v.

WITCO CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

Before REAVLEY, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Plaintiff-appellant Glenn Brown filed this action in state court seeking enforcement of an arbitration award in his favor against his employer Witco Corporation. After the case was removed to federal court by Witco, the district court stayed the case and remanded the award to the arbitrator for a specifically limited purpose. Following the arbitrator's decision on remand, the district court determined that the arbitrator had exceeded the limited authority it had granted him. Accordingly, the district

court vacated that part of the arbitrator's decision that exceeded his authority on remand and enforced the remainder of the award.

Brown and his union, the Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 4-447 (the intervening plaintiff-appellant) now appeal the district court's judgment. After threading our way through the twists and turns of the case, and after considering the several arguments made by the parties, we affirm the judgment of the district court.

I

The procedural history of this arbitration case is unusually long and sinuous, and a recitation of that history is necessary to explain the issues raised on appeal.

In 1997, Witco discharged Brown because of chronic absenteeism; however, the company failed to give Brown timely notice of its decision to discharge him, as required by the collective bargaining agreement between Witco and Brown's Union. In response, the Union filed a formal grievance against Witco on Brown's behalf, and Witco and the Union ultimately arbitrated their dispute before Arbitrator Raymond L. Britton on January 22, 1999. On May 24, 1999, the arbitrator ordered that Brown "be reinstated with full back pay and seniority and that he be made whole except for overtime." (The "May 24 Award.")

Brown was reinstated in accordance with the May 24 Award. However, Witco and the Union were unable to reach an agreement on

2

the calculation of Brown's back pay award.[1] Consequently, in July and August 1999, Witco and the Union each asked Arbitrator Britton to clarify how the parties should calculate Brown's back pay award. The Union asked the arbitrator to clarify whether the award included regularly scheduled overtime and night shift premium payments. Witco asked the arbitrator to clarify whether the award should be reduced based on Brown's interim earnings and Brown's apparent failure to mitigate his damages by seeking new employment.[2] Neither Witco nor the Union – Brown's exclusive bargaining representative – ever objected to the clarification requests of the other.

On August 27, 1999, the arbitrator responded to the parties' clarification requests. (The "August 27 Clarification Letter.") The arbitrator noted that "neither party requested that jurisdiction be retained for the purpose of addressing any

---

[1]     Brown was discharged in July 1997 and reinstated in June 1999. According to the parties, Brown's total back pay for this period amounted to $85,801.58 when calculated on a "straight time" basis – i.e., when calculated based solely on the company's "straight time" hourly rate without regard to any additional factors, such as regularly scheduled overtime or special premiums paid to workers on the night shift and without regard to any of Brown's interim earnings.

[2]     Brown testified at the arbitration hearing that he had not been regularly employed from July 1997 until June 1999 and that he earned about $3,000 during this time from self-employment. The Union also submitted Brown's past earnings statement, dated July 11, 1999, indicating that Brown had earned approximately $2,500 to $3,000 from July 1997 to June 1999 performing odd jobs. There is apparently no testimony as to whether Brown made any effort to find new employment during this time.

3

questions that might arise as to the implementation of the remedy awarded," and he expressed the view that, therefore, "jurisdiction was not retained." Nevertheless, the arbitrator provided guidelines for construing the original May 24 Award. He stated that the language of the back pay award was intended to grant Brown back pay based only on the company's "straight time" hourly rate for all hours of Brown's regular shifts. Because payment of night shift premiums and regularly scheduled overtime would be in addition to the "straight time" hourly rate, the arbitrator concluded that such payments would not comport with the intent of his original May 24 Award. Turning to the interim earnings and mitigation issues raised by Witco, the arbitrator noted that the May 24 Award was silent with respect to these issues; nevertheless, he concluded that it was appropriate to consider these issues in order to clarify the intent of the original May 24 Award. He also concluded that Brown did have an "affirmative duty to reasonably mitigate the amount of loss that he suffered as a result of [Witco's wrongful] discharge and to show that he made a good faith effort to satisfy this obligation by seeking comparable employ." The arbitrator further stated that the "[f]ailure of the Grievant to establish that he actively and adequately searched for comparable work justifies that a reasonable deduction be made from the $85,801.58 figure calculated as back wages."[3] Witco urged the

_____

[3] Brown and the Union appear to argue that these determinations were legally erroneous and factually baseless

4

arbitrator to deduct about $50,000 or $60,000 from the $85,801.58 figure calculated as back wages by the parties. However, the arbitrator rejected this suggestion because it was not based on any formula or evidence that demonstrated the amount Brown should have been able to earn if he had taken reasonable steps to mitigate his damages. Instead, the arbitrator stated that, for the purposes of mitigation of Brown's damages, the parties should use the average wage of similar workers in the New Orleans area as a "guide." Specifically, the arbitrator said:

> In endeavoring to determine an appropriate reduction to the Grievant's back-pay award, the Arbitrator is of the view that it would be more in keeping with the Award if the parties use as a guide, the average wage paid to employees possessing the experience, skills and background of the Grievant in the New Orleans area. Further, the Grievant should be afforded a grace period of three (3) months as representative of the time reasonably necessary to obtain comparable employment.

---

because Witco did not raise mitigation as an affirmative defense during the initial arbitration hearing. However, the Union has not sought to modify or correct the arbitration award. In any event, the courts should not review the merits of an arbitrator's decision pursuant to a collective bargaining agreement, even if a party alleges that the arbitrator's decision rests on errors of fact or law. See Major League Baseball Players Association v. Garvey, 532 U.S. 504, 509 (2001). Accordingly, we do not address the correctness of the arbitrator's ruling.

August 27 Clarification Letter at 2.[4]  After receiving the arbitrator's August 27 Clarification Letter, Witco tendered to Brown a check for $13,441.57, reflecting three months back wages for the "grace period" prescribed by the arbitrator and a bonus that was paid to all Witco employees during the period between Brown's discharge and his reinstatement.  Brown cashed Witco's check.  However, the Union and Witco were unable to reach any further agreement regarding any additional amount of back pay owed to Brown.

In November 1999, while Witco and the Union were still negotiating the total amount of Brown's back pay award, Brown personally filed suit against Witco in state court seeking confirmation and enforcement of the original May 24 Award.  The Union was not a party to the case at this point.  Witco promptly removed the case to federal district court based on federal question jurisdiction and answered Brown's complaint.[5]  Witco then

---

[4]    The Union also asked the arbitrator to clarify one issue that does not appear to be directly related to the calculation of Brown's back pay award.  The Union asked the arbitrator to make it clear that Witco should expunge Brown's disciplinary record in accordance with the provisions of the collective bargaining agreement.  In his August 27 Clarification Letter, the arbitrator indicated that, consistent with the terms of the collective bargaining agreement and the May 24 Award, Witco should not consider any attendance violation by Brown that occurred more than one year before Brown was terminated and any other violation that occurred more than three years before Brown was terminated.

[5]    Brown's enforcement action arises under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), because Brown's claim requires the court to interpret his rights under a collective bargaining agreement and determine whether the agreement has been

moved to stay Brown's enforcement action and remand the case to the arbitrator to clarify further how to implement Brown's back pay award. Brown opposed the remand motion, arguing that the May 24 Award was final and unambiguous in its determination that Brown was entitled to full back pay. The case was referred to a magistrate judge for all proceedings and for judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.

In ruling on the remand motion, the magistrate judge agreed with Witco in large part, holding that the arbitrator retained

breached. See Carrion v. Enterprise Ass'n, 227 F.3d 29, 34 (2d Cir. 2000) (§ 301 jurisdiction extends to law suits by a represented employee seeking to enforce an arbitration award against an employer); Cleveland v. Proca Co. 38 F.3d 289, 296 & n.5 (7th Cir. 1994) (same). See also DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983); Thomas v. LTV Corp. 39 F.3d 611, 621-22 (5th Cir. 1994). Such a claim is, according to the Supreme Court, a "hybrid" claim against both the employer and the union "amounting to a direct challenge to the private settlement of disputes under the collective bargaining agreement." DelCostello, 462 U.S. at 165 (quotations and citations omitted). The employee's cause of action against the employer arises directly from § 301. If the employee so chooses, he may sue one defendant and not the other, but the case to be proved is the same whether one or both are sued. Thomas, 39 F.3d at 621-22. The employee must allege and prove both that the employer has breached the collective bargaining agreement and that the union has breached its duty of fair representation. Id. (citing Daigle v. Gulf States Utilities Co., Local 2286, 794 F.2d 974, 977 (5th Cir. 1986)). See also DelCostello, 462 U.S. at 165-66. In this case, Brown does not appear to have alleged – much less shown – any breach of the Union's duty of fair representation. Accordingly, Brown may have failed to state an adequate § 301 claim. However, neither Witco nor the Union appears to have ever raised this issue below and no one raises the issue on appeal. Accordingly, we do not decide whether Brown has personally stated a proper § 301 claim in this case. In any event, as an intervening plaintiff the Union clearly does state a claim under § 301, so there can be no question about our subject matter jurisdiction.

7

jurisdiction to clarify his May 24 Award as a matter of law; that the parties had timely requested such clarification; and that the August 27 Clarification Letter is a timely and binding clarification of the May 24 Award. However, the magistrate judge ultimately denied Witco's motion to remand, finding the clarified arbitration award to be "clear and unambiguous as to both the content of the back pay award and the method used to calculate it."

After the Union intervened, Witco filed a second motion seeking remand to the arbitrator for clarification regarding the proper method for determining the "average wage" figure referenced in the arbitrator's August 27 Clarification Letter. Brown opposed the motion for the same reasons he opposed Witco's first motion, but the Union took a different position. The Union agreed that a remand was appropriate, but it argued that the court should remand the case to the arbitrator with instructions to revisit all of his previous determinations regarding Brown's interim earnings and his duty to mitigate damages.

The magistrate judge agreed with Witco and granted the company's motion to stay and remand the case. According to the magistrate, it had become apparent that the parties disagreed as to the exact meaning of "the average wage paid to employees possessing the experience, skills, and background of the Grievant in the New Orleans area." Because such an average wage could not be determined from an undisputed source of information, the magistrate judge concluded that the arbitrator should clarify exactly what

8

that average wage figure should be. However, the magistrate judge found the remainder of the May 24 Award and the August 27 Clarification Letter to be clear and binding on the parties. Accordingly, the magistrate specifically stated that the arbitrator could not reconsider the remainder of the clarified award upon remand.[6]

On remand to the arbitrator, Witco presented affidavit evidence from an expert witness regarding the average wage paid to employees in the New Orleans area possessing Brown's experience, skills, and background. The Union, however, chose not to present any evidence on Brown's behalf regarding the average wage issue. Instead, the Union presented evidence only to support its claim that Brown had made a reasonable good faith effort to search for employment and mitigate his damages. Over Witco's objection, Arbitrator Britton accepted such evidence. On December 14, 2001, the arbitrator found that Witco's evidence supported a finding of an average wage of $21.51 per hour for an average work week of forty-two hours. ("December 14 Remand Decision.") However, Arbitrator Britton concluded that

> inasmuch as the parties have agreed to the figure of $85,801.58 calculated as back wages, the Arbitrator finds that the Grievant is entitled to the sum of $85,801.58 less the amount paid to the Grievant of $13,441.57 and $3,500 derived from outside work. It is the

---

[6] The magistrate also stated that the arbitrator could receive whatever evidence the arbitrator considered appropriate and necessary to make the clarification specified in the remand order.

9

> further view of the arbitrator that the work ethic of the Grievant should be considered as a factor in the computation of the back wages due the Grievant.... Because of this demonstrated poor work ethic, a further deduction of $8,500 is warranted.... So calculated, the total amount due the Grievant is $60,360.01.

December 14 Remand Decision at 2. In other words, the arbitrator essentially abrogated the determinations that he made in the August 27 Clarification Letter, which provided for a "reasonable deduction" in Brown's back pay award on account of Brown's failure to satisfy his affirmative duty to mitigate his damages by seeking comparable employment. The arbitrator also ignored the specific formula that he had provided for calculating such a "reasonable deduction." Instead, the arbitrator awarded Brown full back pay, calculated on a straight time basis with deductions <u>only</u> for Brown's actual interim earnings, his history of absenteeism, and the amount that Witco had already paid him.

After receiving the arbitrator's clarification decision, the parties jointly moved the magistrate judge to lift his stay on the case, and they filed cross motions for summary judgment. On April 26, 2002, the magistrate judge granted Witco's motion for summary judgment and denied the summary judgment motions filed by Brown and the Union. (Hereinafter, the "April 26 Summary Judgment Order.") In doing so, the magistrate judge reaffirmed his prior decision holding Arbitrator Britton's August 27 Clarification Letter to be a binding clarification of his initial award. The magistrate judge

10

further held that the arbitrator exceeded the scope of his authority under the remand order by revisiting the clarifications he made in his August 27 Clarification Letter to the parties authorizing a "reasonable deduction" in Brown's back pay award on account of Brown's failure to establish his good faith effort to seek comparable employment and prescribing a specific method for calculating such a deduction. Because those unambiguous determinations had already been confirmed and enforced by the magistrate judge's remand order, the magistrate held that Arbitrator Britton had no authority on remand to reconsider them:

> The only issue upon remand was "to determine exactly how that 'average wage' should be calculated" and, upon determining that number, to plug it into the formula and calculate the amount of back wages due under that formula.

April 26 Summary Judgment Order at 12 (emphasis in original). Accordingly, the magistrate judge vacated those parts of the arbitrator's remand decision that exceeded the scope of his limited authority on remand. The magistrate judge enforced the remainder of the Arbitrator's decision and awarded Brown back pay in the amount of $85,801.58 reduced by an amount equal to $21.51 per hour for a forty-two hour week for the period of time beginning three months after the date of Brown's discharge through the date of his reinstatement.

II

Both Brown and the Union timely appealed the district court's final judgment. On appeal, Brown argues that the magistrate judge

11

erred by not enforcing the original May 24 Award, which ordered that Brown be reinstated with seniority and "full back pay." The Union makes a different argument. It contends that the magistrate judge improperly limited the arbitrator's authority on remand. The Union argues, as it did below, that the magistrate judge should have remanded the case to the arbitrator for clarification of all the arbitrator's rulings regarding Brown's duty and apparent failure to mitigate his damages. Both the Union and Brown further argue that the magistrate erred by vacating parts of the arbitrator's decision on remand and selectively enforcing the remainder.

It is not surprising that Witco maintains that the magistrate judge got the case exactly right. In response to Brown's argument, Witco contends that the arbitrator had authority to clarify his original May 24 Award and that the August 27 Clarification Letter is a timely clarification of that award that is binding on all the parties. In response to the Union's argument, Witco argues that the magistrate judge did not err in remanding the case to the arbitrator for the limited purpose of clarifying the exact meaning of "the average wage paid to employees possessing the experience, skills, and background of the Grievant in the New Orleans area." Witco further argues, in response to both Brown and the Union, that the district court did not err in vacating those parts of the arbitrator's decision that exceeded the arbitrator's authority under the remand order.

12

This court reviews a district court order confirming and enforcing an arbitration award de novo, using the same standard as the district court. National Gypsum Co. v. Oil, Chemical, and Atomic Workers International Union, 147 F.3d 399, 401-02 (5th Cir. 1998). The scope of judicial review of a labor arbitration award pursuant to a collective bargaining agreement is extremely limited. See United Food and Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corp., 193 F.3d 328, 332 (5th Cir. 1999). A court is not authorized to review the merits of the arbitrator's decision, even if a party alleges that the arbitrator's decision rests on errors of fact and law. See Garvey, 532 U.S. at 509. Furthermore, a court is required to enforce an arbitration award only as written by the arbitrator. See Oil, Chemical & Atomic Workers International Union, Local 4-367 v. Rohm & Haas, Texas, Inc., 677 F.2d 492, 495 (5th Cir. 1982). Thus, if the arbitration award in question is ambiguous in its scope or application, it is unenforceable. San Antonio Newspaper Guild Local 25 v. San Antonio Light Division, 481 F.2d 821, 824 (5th Cir. 1973). A court may not interpret the award in order to resolve the ambiguity and implement the award; instead, the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities. Id.; see also Local Union 59, International Brotherhood Of Electrical Workers, AFL-CIO v. Green Corp., 725 F.2d 264 (5th Cir. 1984) (same). However, once the court is presented with an unambiguous, enforceable award, the arbitrator's award must

13

be upheld so long as the arbitrator's decision "draws from the essence of the collective bargaining agreement" and does not exceed the scope of the arbitrator's authority. National Gypsum, 147 F.3d at 401-02 (internal citations and quotations omitted).

A.   Brown's Arguments.

Brown argues (1) that the arbitrator's original May 24 Award was final and unambiguous, (2) that Witco failed to file a motion seeking modification of the May 24 Award pursuant to the Federal Arbitration Act in a timely manner, and (3) that the arbitrator lacked jurisdiction to modify the May 24 Award via his August 27 Clarification Letter.  Brown therefore argues that the May 24 Award should be enforced as a final award without regard to the August 27 Clarification Letter or the subsequent decision on remand and that he should be awarded $85,801.58 – the amount that the parties have stipulated to be Brown's full back pay calculated on a straight time basis without consideration of mitigation or any other factors.

(1)

Generally speaking, an arbitration award for "full back pay" is not ambiguous on its face simply because it fails to address whether the award is to be offset by a grievant's interim earnings or a grievant's failure to mitigate his damages by taking reasonable steps to seek interim employment.  See International Chemical Workers Union, Local 683 v. Columbian Chemicals Co., 331 F.3d 491, 498-99 (5th Cir. 2003).  See also International Union of

14

Operating Engineers, Local No. 841 v. Murphy Co., 82 F.3d 185 (7th Cir. 1996). But cf. San Antonio Newspaper Guild, 481 F.2d at 822-23 (finding such an award ambiguous under certain circumstances). However, in this case, it seems clear that Brown cannot argue that the May 24 Award is a final and unambiguous award without consideration of the August 27 Clarification Letter. Although Brown raised this argument in opposition to Witco's first and second motions to remand, Brown failed to raise the argument during the summary judgment phase of the proceedings below. At the summary judgment stage of the proceedings, Brown asked only for enforcement of the arbitrator's December 14 Remand Decision and for damages in the amount of $60,360.01. Thus, Brown has forfeited any argument that he is entitled to $85,801.58 based on the unambiguous terms of the May 24 Award by failing to raise the argument properly below. See Topalian v. Ehrman, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992); Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999); Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1142 n.8 (5th Cir. 1992).

Accordingly, this court can consider Brown's argument only insofar as it may show a plain error that will result in a manifest miscarriage of justice. Nathan Rodgers Constr. & Realty Corp. v. City of Saraland, Ala., 676 F.2d 162, 163 (5th Cir. 1982) (no plain error in district court's failure to consider plaintiff's tolling argument not clearly addressed to district court). Especially in the light of the long and convoluted procedural history of this

15

case, it is clear that there is no plain error – much less a manifest miscarriage of justice – in the district court's decision to recognize and confirm the arbitrator's August 27 Clarification Letter as a binding clarification of the original arbitration award.  Both Witco and the Union, as Brown's exclusive bargaining representative in the arbitration, <u>voluntarily</u> requested that the arbitrator clarify the May 24 Award in mid July and late August 1999 – several months before Brown filed the instant enforcement action.[7]  In response to their request, Arbitrator Britton plainly did clarify the May 24 Award, as described above.  Although the arbitrator expressed the view that he did not have jurisdiction to modify the May 24 Award to help the parties implement the award, he clearly did have jurisdiction to clarify what he originally intended to award Brown in the light of the specific issues and ambiguities raised by both parties post-arbitration.  <u>See</u> <u>Office & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital</u>, 186 F.3d 326, 331 (3d Cir. 1999); <u>Glass Molders, Potters, Plastics & Allied Workers International Union v. Excelsior Foundry</u>, 56 F.3d 844, 848 (7th Cir. 1995).  Therefore, Arbitrator Britton's August 27 clarification of the May 24 Award must be deemed final and binding on the parties.

---

[7]     Brown does not appear to allege or argue that the Union breached its duty of fair representation either by requesting clarification from the arbitrator or by failing to oppose Witco's request for clarification.  Accordingly, the Union's actions in the course of the arbitration can fairly be attributed to Brown.

16

Brown urges the court to disregard the August 27 Clarification Letter because Witco never served Brown or the Union with notice of a motion to modify, correct, or vacate the award as required by the Federal Arbitration Act. See 9 U.S.C. §§ 1-16 (the "FAA"). However, Brown's reliance on the statute of limitations of the FAA is misplaced. The FAA does not apply to cases reviewing arbitration awards pursuant to a collective bargaining agreement or any other "contracts of employment of ... workers engaged in foreign or interstate commerce." See 9 U.S.C. § 1. See also United Paperworkers International Union v. Misco, 484 U.S. 29, 41 n.9 (1987). When an arbitration decision arises from the terms of the collective bargaining agreement, judicial review of the arbitration award is authorized not by the FAA but by the terms of Section 301 of the Labor Management Relations Act. See 9 U.S.C. § 1; 29 U.S.C. § 185 (the "LMRA" or "Section 301"). See also Misco, 484 U.S. at 41 n.9; Columbian Chemicals Co., 331 F.3d at 494-95. Thus, we are not persuaded by Brown's arguments based on the FAA.[8]

---

[8]     Courts may rely on the FAA for guidance in reviewing an arbitration award arising under a collective bargaining agreement and Section 301 of the LMRA, but courts are not obligated to follow the FAA in every technical detail. Columbian Chemicals Co., 331 F.3d at 494-95 (citing cases). Historically, this court has ruled on labor arbitration disputes involving collective bargaining agreements pursuant to Section 301 without reference to the FAA. Id. In any event, the FAA's statute of limitations provides no real support for Brown's position. As the magistrate judge correctly noted, the FAA's three month statute of limitations period governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate, modify, or

Brown argues that the May 24 Award was final and that the arbitrator therefore lacked jurisdiction to clarify the award via his August 27 Clarification Letter.[9]  Brown makes this argument based solely on the plain language of the collective bargaining agreement, which provides that "[t]he decision of the arbitrator shall be final and binding on both parties."  However, contrary to Brown's argument, these plain words alone do not mean that the arbitrator has no authority to interpret or construe his arbitration award, and Brown's reliance on them provides no real foundation for the argument he makes.

As Witco suggests, Brown's legal conclusion that the arbitrator lacked authority to issue the August 27 Clarification Letter seems to rely on the doctrine of functus officio ("a task performed") – a common law rule that bars an arbitrator from revisiting the merits of an award once the award has been issued. See Bayne v. Morris, 68 U.S. (1 Wall.) 97, 99 (1863) (summarizing the strict version of the rule that prevailed at common law).  This court has not often addressed the scope of the functus officio

---

correct an arbitration award.  See 9 U.S.C. § 12.  The FAA does not regulate the time in which the parties may request clarification of an arbitration award from the arbitrator.  That is essentially a matter of contract between the parties that should be governed by the terms of the collective bargaining agreement.

[9]  Article XVIII, section 3 of the collective bargaining agreement between Witco and the Union provides that "[t]he decision of the arbitrator shall be final and binding on both parties."

doctrine.  See Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215, 1220 (5th Cir. 1990).  However, other circuits have addressed the doctrine at length, and we find their view of the doctrine to be persuasive.  See generally Brownsville General Hospital, 186 F.3d at 331 (discussing the modern relevance of the doctrine of functus officio in labor cases); Excelsior Foundry, 56 F.3d at 846-48 (same); Domino Group, Inc. v. Charlie Parker Memorial Foundation, 985 F.2d 417, 420-21 (8th Cir. 1993) (invoking the doctrine of functus officio in the context of commercial arbitration).

Although the doctrine of functus officio was strictly enforced at common law (often to thwart the effectiveness of arbitration), in the wake of the Supreme Court's pro-arbitration decision in Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957), the doctrine has not been as strictly enforced in labor dispute cases arising under Section 301 of the LMRA.  Excelsior Foundry, 56 F.3d at 847-48; Colonial Penn Insurance Co. v. Omaha Indemnity Co., 943 F.2d 327 (3d Cir. 1991).  Furthermore, there are a number of well-recognized exceptions to the functus officio rule.  An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation.  See Excelsior Foundry, 56 F.3d at 847-48; Colonial Penn Insurance Co.,

19

943 F.2d at 332. In this case, the arbitrator's August 27 Clarification Letter clearly falls within the clarification and completion exceptions to the functus officio rule. See Excelsior Foundry, 56 F.3d at 846-48. Accordingly, the arbitrator was within his authority under the collective bargaining agreement when he clarified the intent of his original award via the August 27 Clarification Letter.

Finally, in the absence of any contractual provision or formal arbitration rule expressly to the contrary, it seems clear that an arbitrator may exercise his power to clarify the terms of an award when he is asked to do so by parties mutually and without any party's objection within a reasonable period of time. See Excelsior Foundry, 56 F.3d at 848.[10] In this case, the Union made its request for clarification on Brown's behalf fifty-one days after the May 24 Award, and Witco made its request for clarification seventy-one days after the May 24 Award. Such requests for clarification are not unreasonable or untimely under the circumstances of this case. Thus, there clearly is no plain error in the magistrate judge's decision to enforce the August 27

---

[10] We must acknowledge that we would be presented with a different case if, for example, the Union had not asked for clarification of the May 24 Award or if the Union had formally objected to Witco's request for clarification as being a request that exceeded the scope of the arbitrator's authority under the terms of the collective bargaining agreement.

20

Clarification Letter as a timely and binding clarification of the arbitrator's original May 24 Award.[11]

---

[11]   Our decision today is not conflict with this court's recent decision in Columbian Chemicals, 331 F.3d at 498-99.  In Columbian Chemicals, an arbitrator ordered an employer to reinstate a wrongly discharged employee and "make him whole in salary, benefits, and seniority." The union and the employee sued to enforce the award.  The employer moved the court to remand the award to the arbitrator with instructions to clarify whether the grievant's failure to mitigate should be taken into account as an offset to the award.  Id.  A panel of this court held that the company had waived any issue of offsets by failing to raise that issue with the arbitrator and by failing to challenge the award within the ninety day limitations period pursuant to the FAA.  Id. Under those particular circumstances, the panel concluded that the award's silence with regard to offsets meant that no offset was granted.  Id.

   In contrast to Columbian Chemicals, Witco did raise the issue of Brown's mitigation with the arbitrator in its request for clarification before this enforcement action was filed. Furthermore, the arbitrator responded to that request in a reasonable and timely fashion, clarifying the original arbitration award and finding in Witco's favor on the mitigation issue – again, before the suit seeking to enforce the award. Therefore, we should defer to the judgment of the arbitrator and enforce both the original arbitration award and the arbitrator's timely interpretation of the award because "'[i]t is the arbitrator's construction which was bargained for.'"  See San Antonio Newspaper Guild, 481 F.2d at 825 (quoting United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 599 (1960)).

   To be sure, the procedural posture of this case is more like San Antonio Newspaper Guild than Columbian Chemicals.  Compare San Antonio Newspaper Guild, 481 F.2d at 822-23 with Columbian Chemicals, 331 F.3d at 498-99 (distinguishing San Antonio Newspaper Guild).  In San Antonio Newspaper Guild, a similar dispute over the scope of a back pay arbitration award was resolved in favor of the company through arbitration by a second arbitrator shortly after the union's filing of an enforcement action in federal court.  481 F.2d at 822-26.  After finding the original "make whole" back pay award to be ambiguous, this court affirmed the arbitration award, as clarified by the second arbitrator's decision, noting that it was not for this court to second-guess the arbitrator's judgment with respect to meaning of the original back pay award.  Id.  In this case too, we must enforce the May 24 Award, as construed by

B.    The Union's Arguments.

The Union does not argue, as Brown does, that the magistrate erred when he refused to enforce the May 24 Award without consideration of the August 27 Clarification Letter.  Instead, the Union argues that the magistrate judge's error was in the scope of his remand to the arbitrator.  Specifically, the Union argues that the magistrate judge impermissibly limited the arbitrator's authority on remand when he instructed the arbitrator only to clarify the precise meaning of "the average wage paid to employees possessing the experience, skills and background of the Grievant in the New Orleans area" and to calculate Brown's back pay award based on the formula set forth in the August 27 Clarification Letter. According to the Union, remand of all of the arbitrator's previous determinations regarding Brown's interim earnings and his duty to mitigate damages was necessary in order to resolve the ambiguous and contradictory nature of the award, as clarified by the August 27 Clarification Letter.

The magistrate judge rejected the Union's remand argument.  He found the original award and the August 27 Clarification Letter to be ambiguous only with respect to the precise meaning of "the average wage paid to employees possessing the experience, skills and background of the Grievant in the New Orleans area."  After a

_____

the arbitrator's August 27 Clarification Letter, in order to give the parties that for which they bargained – i.e., the judgment of the arbitrator.

22

de novo review of the record in this case we find no error in the magistrate's reading of the May 24 Award and the August 27 Clarification Letter.[12]

Although the Union argues that this clarification ruling made Brown's arbitration award ambiguous and contradictory, there is nothing unclear or obviously inconsistent about the arbitrator's words in the original award and in the August 27 Clarification Letter. In the letter, pursuant to the parties' mutual requests, the arbitrator stated (1) that Brown should be reinstated with full back pay; (2) that Brown had a duty to mitigate his damages and that Brown had failed to show that he had taken reasonable steps to look for new employment; (3) that in calculating Brown's full back pay, the parties should deduct a reasonable amount from the stipulated amount of $85,801.58 on account of that failure to mitigate his damages; (4) that the parties should use the "average wage" of a similarly situated worker over the interim of Brown's wrongful discharge as a guide for determining what the total deduction should be; and (5) that the parties should give Brown a three month grace period with no deduction to account for the time necessary to obtain comparable employment.

---

[12] Although a court should not review the merits of an arbitrator's decision or substitute its judgment for that of the arbitrators, in an action to confirm or enforce an arbitration award, the court itself must determine whether the arbitration award is ambiguous and decide what must be clarified by the arbitrator on remand. Cf. San Antonio Newspaper Guild, 481 F.2d at 825; Rohm & Haas, Texas, Inc., 677 F.2d at 495; Brownsville General Hospital, 186 F.3d at 332-33; Domino Group, Inc., 985 F.2d at 420.

Thus, on remand from the magistrate judge, all that the arbitrator had to do under the magistrate judge's clear remand order was determine precisely what the "average wage" figure should be and use that figure in the formula set forth in the August 27 Clarification Letter to calculate the total amount of Brown's back pay award. The magistrate judge made it clear that the arbitrator could receive whatever evidence was appropriate and necessary to make this clarification, but the magistrate also made it equally clear that the remainder of the May 24 award and the August 27 Clarification Letter were deemed clear and binding on the parties. Nevertheless, the arbitrator went beyond the express scope of the remand order by issuing a clarification that essentially reversed the determinations that he made in the August 27 Clarification Letter.

Notwithstanding the arbitrator's disregard of the limited scope and purpose of the magistrate's remand order, Brown and the Union argue that the district court erred by vacating those parts of the arbitrator's December 14 Remand Decision that exceeded the scope of the court's remand order. They argue that the arbitrator's December 14 Remand Decision was supported by the record and consistent with the terms of the collective bargaining agreement and, given the deferential standard of review that applies in actions to confirm and enforce arbitration awards, that the decision therefore must be enforced in its entirety. This argument seems inapposite to the issue we are specifically

24

addressing. Although it is true that the arbitrator draws his authority from the terms of the collective bargaining agreement and has broad discretion to adjudicate those matters that are properly submitted to him pursuant to a collective bargaining agreement, the immediate issue before us is whether the arbitrator has the authority to disregard the express terms of a federal court's remand order and effectively reverse determinations that the court has already confirmed to be unambiguous and binding on the parties. Clearly, he does not. Once a court of competent jurisdiction has confirmed that an arbitration decision is unambiguous and binding on the parties, the arbitrator becomes <u>functus officio</u> with respect to that portion of the arbitration award and lacks authority to reconsider those aspects of his decision that are unambiguous and binding. <u>Brownsville General Hospital</u>, 186 F.3d at 332-33; <u>Domino Group, Inc.</u>, 985 F.2d at 420. Thus, on remand, the arbitrator is limited in his review to the specific matter or matters remanded for his clarification and he may not rehear or redetermine matters outside the scope of the remand order. <u>See</u> <u>Brownsville General Hospital</u>, 186 F.3d at 332-33; <u>Domino Group, Inc.</u>, 985 F.2d at 420. It follows, therefore, that if the arbitrator exceeds the scope of a limited remand order, then the court may vacate those portions of the arbitrator's decision on remand that go beyond his limited authority to clarify, complete, or correct the award that he has already made. Accordingly, the district court was correct when it

vacated those parts of the arbitrator's December 14 decision on remand and enforced the remainder of the award.

## III

For the foregoing reasons, the judgment of the district court is, in its entirety,

AFFIRMED.

26