# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 03-2484, 03-2771

EMPLOYERS INSURANCE OF WAUSAU,

*Petitioner-Appellee*,

*v.*

EL BANCO DE SEGUROS DEL ESTADO,

*Respondent-Appellant.*

_____

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 98 C 521—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED JANUARY 5, 2004—DECIDED FEBRUARY 3, 2004

_____


Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* The procedurally intricate litigation that has culminated in these twin appeals arises from a dispute between the parties to several contracts of reinsurance. Back in the 1960s and 1970s, Employers Insurance of Wausau had reinsured, with a number of insurance companies including an instrumentality of the Uruguayan government called El Banco de Seguros del Estado ("state insurance bank"), insurance obligations of Wausau. Wausau sustained losses from claims arising out of asbestos-related illness that it tried to offload on to the reinsurers. They

resisted. Wausau demanded arbitration pursuant to the reinsurance contracts, and in 1995 an arbitration panel awarded Wausau some $7.8 million, of which Banco's share was $181,000. The award, confirmed by a Wisconsin state court in *In re Employers Ins. of Wausau*, 552 N.W.2d 420 (Wis. App. 1996), provided that reinsurers—expressly including Banco—who failed to pay the award within 45 days would have to "provide a Letter of Credit to Employers of Wausau in the amount of $9,000,000 in a form acceptable to the Wisconsin Insurance Department and to secure payment of the ultimate liability in this matter." All the reinsurers paid within 45 days except Banco, which neither paid nor posted a letter of credit. Years passed and in 1998 Wausau petitioned the district court in the Western District of Wisconsin to confirm the award against Banco, which, although both named in the state-court confirmation proceeding as a defendant and served, had not appealed or otherwise participated in that proceeding yet claimed not to be bound by the judgment in it. It is unclear why Wausau sought relief in federal district court for Banco's defiance rather than instituting contempt proceedings in the state court. But Banco does not challenge the propriety of Wausau's choice of forum and there is no doubt that the federal court had jurisdiction under the treaties concerning disputes over arbitration with foreign entities. 9 U.S.C. §§ 203, 302.

Banco defended in the district court on the ground that it had not received proper notice of the arbitration. The district court rejected the defense and confirmed the award, and we affirmed. 199 F.3d 937 (7th Cir. 1999). Banco refused to comply with the award even after the judge issued a writ of execution, and so Wausau instituted a further postjudgment proceeding. In response, Banco acknowledged its obligation to pay the $181,000 plus interest and attorneys' fees, which had also been part of the award. But it

refused to post the $9 million letter of credit on the ground that all that the arbitrators back in 1995 had required it to do was to post a letter of credit to secure the payment of so much of the award as remained unpaid, so that once Banco paid what it owed no purpose would be served by the posting of a letter of credit except to secure Wausau against future debts of Banco to it that might arise from the reinsurance contracts. Yet while acknowledging that it owed Wausau $181,000 plus interest and attorneys' fees, Banco neither paid anything nor posted a letter of credit in any amount or on any terms.

Rejecting Banco's argument, the district court in September of 2001 ordered Banco to post the $9 million letter of credit and pay the award, including interest and attorneys' fees. Banco appealed, but we dismissed the appeal on the ground that the district court's order was neither a final judgment nor an injunction. A motion to hold Banco in contempt remained pending in the district court, and while the order to post a letter of credit was an interlocutory injunction, it was not immediately appealable under 28 U.S.C. § 1292(a)(1) because it merely reiterated the previous injunction, which we had affirmed, commanding Banco to post the letter of credit. *Gautreaux v. Chicago Housing Authority*, 178 F.3d 951, 956-58 (7th Cir. 1999). Meanwhile, however, Banco had finally admitted defeat to the extent of paying Wausau $1.5 million, which included the $181,000 awarded by the arbitrators, the interest and attorneys' fees also awarded by the arbitrators, plus attorneys' fees incurred by Wausau subsequent to the arbitration, although the payment of interest fell short by $16,000 (eventually it was paid, however). But Banco still refused to post the letter of credit.

Shortly afterwards the district court socked Banco with another $50,500 in sanctions to punish it for a suit it had

brought in a federal district court in New York that had been transferred to the Western District of Wisconsin. In it Banco had sought an interpretation of the arbitrators' award that would have excused it from having to post the letter of credit. It had sued in New York because Wausau had filed the judgment that it had obtained in the Western District of Wisconsin there believing Banco might have assets in New York that it could levy on to satisfy the judgment it had obtained in the Western District. The filing of the judgment in New York did not justify Banco's mounting what amounted to a collateral attack on the Western District's judgment. The circumstances in which collateral attacks are permitted in civil matters are circumscribed, see Fed. R. Civ. P. 60(b), and were never present in this case. Had Wausau tried to levy on the judgment in New York, Banco could have resisted on various grounds, such as that the amount of the judgment was incorrectly shown on the papers filed by Wausau (it was) or that Banco had no assets in New York that Wausau would be entitled to levy on. Banco did not do this; probably Wausau had given up on trying to collect anything in New York.

A year after the transfer of Banco's frivolous New York lawsuit back to the Western District of Wisconsin, and even though the district court's judgment requiring the posting of a letter of credit had already become final by virtue of our having affirmed it, Banco demanded that Wausau arbitrate the issue whether Banco was required to post a letter of credit. Wausau responded by asking the district court to enjoin arbitration and impose sanctions for Banco's continued refusal to post the letter of credit. It was thereby seeking postjudgment relief to protect the earlier judgment that it had obtained from the district court, requiring the posting of the letter of credit, from being undone. E.g., *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1224 (7th Cir. 1993);

*EEOC v. Gurnee Inns, Inc.*, 956 F.2d 146, 148 (7th Cir. 1992); *Webb v. Ada County*, 195 F.3d 524, 526 (9th Cir. 1999). The district court issued the injunction and also imposed civil contempt sanctions for disobeying the order to post the letter of credit, ordering Banco to pay the court $2,000 a day, rising in stages to $4,000 on May 16, 2003, until Banco complied with that order, and to pay Wausau an additional $240,000 in attorneys' fees incurred in efforts to obtain the relief that the district court had ordered earlier. The clock continues to tick. Banco, which could have limited its liability to $181,000 in 1995, has already paid more than $1.5 million and if we affirm the sanctions and the additional attorneys' fees ordered will owe in excess of $1 million more. No doubt it has also incurred very substantial attorneys' fees of its own over the past eight years; a modest guess would be $500,000. If this is right, Banco stands to lose more than 15 times the amount of its original liability to Wausau.

The appeals challenge the sanctions, the additional attorneys' fees, the injunction against arbitrating the dispute over Banco's duty to post a letter of credit, and the district court's order to post it. The issues are intertwined. The frivolous demand for arbitration, set against the backdrop of Banco's seemingly irrational obduracy throughout the eight years since the issuance of the arbitrators' award, showed that Banco would never comply with the order to post a letter of credit unless subjected to the strongest possible penalty for civil contempt. The basis of the demand for arbitration was the disagreement between the parties over whether, as Wausau believes, the arbitrators intended that any reinsurer who did not pay the arbitration award would have to issue an irrevocable letter of credit that Wausau could use to secure future debts that the reinsurer might owe Wausau under its reinsurance contracts, or whether as

Banco contends the intention was just to require a letter of credit to secure payment of the arbitrators' award; in that event Banco's eventual satisfaction of the award discharged its duty to issue a letter of credit. That is a legitimate disagreement. Indeed, we think Banco has the better of the argument. But the time to have sought arbitral clarification was when the award was issued, not eight years later. There was no legal basis for so belated a demand for clarification.

It is true that although there is a three-month limit on motions to vacate, modify, or correct an arbitral award, 9 U.S.C. § 12, there is no fixed deadline for a motion to remand for purposes of obtaining a clarification of the award. *Hyle v. Doctor's Associates, Inc.*, 198 F.3d 368, 371 n. 1 (2d Cir. 1999); *United Steelworkers of America, Local 4839 v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 968 (6th Cir. 1990). But when no deadline for filing a motion or other pleading is specified, the inference is not that the motion can be filed at any time before the Day of Judgment, but that it must be filed within a reasonable time. Eight years is not a reasonable time. It is a separate question what the deadline is for requesting clarification from the original arbitrators directly, as distinct from asking a court to remand the case to the arbitrators. The former deadline "is essentially a matter of contract between the parties," *Brown v. Witco Corp.*, 340 F.3d 209, 218 n. 8 (5th Cir. 2003), but if there is no applicable contractual term, again a reasonable time is the default rule. *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995); *Brown v. Witco Corp.*, *supra*, 340 F.3d at 219; cf. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO, Local 631 v. Silver State Disposal Service, Inc.*, 109 F.3d 1409, 1410, 1412 (9th Cir. 1997). Not only is eight years unreasonable (quite apart from the fact that one of the

arbitrators has died), but we can't imagine a panel of arbitrators being willing to clarify an award after the award had been challenged in federal court and enforced, unless directed to do so by the court. See *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999).

Alternatively, without seeking clarification Banco could have posted a $9 million letter of credit that by its terms would terminate when it paid the entire amount that it owed Wausau. That would have placed the burden on Wausau to challenge the adequacy of the letter of credit. Banco didn't do that either.

The remaining question is whether Banco has in fact to issue an unconditional letter of credit. The tail of exposure created by its reinsurance contracts with Wausau is a long one because of the length of time that it takes asbestos claims to ripen. Wausau believes that before coverage ends, Banco may owe it more than $9 million, so it would very much like to have a letter of credit that would guarantee its being able to collect from Banco whatever money turns out to be due. And while letters of credit are sometimes used to secure debts that arose before the letter was issued, *In re Compton Corp.*, 831 F.2d 586, 594 (1987), modified on unrelated grounds, 835 F.2d 584 (5th Cir. 1988) (per curiam); *In re El Paso Refinery, LP*, 171 F.3d 249, 254 (5th Cir. 1999); *In re Air Conditioning, Inc.*, 845 F.2d 293, 296-97 and n. 3 (11th Cir. 1988), they are more commonly (*Transparent Products Corp. v. Paysaver Credit Union*, 864 F.2d 60, 63 (7th Cir. 1988)) used to secure future debts, as in *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 636 (7th Cir. 1987); *Colonial Courts Apartment Co. v. Proc Associates, Inc.*, 57 F.3d 119, 123 (1st Cir. 1995), and *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 884-85 (3d Cir. 1977).

But we do not think the arbitrators' award in this case can sensibly be interpreted to require such a guaranty. Remember that the duty to post a letter of credit was imposed by the arbitrators in respect of their having imposed liability on the reinsurers for a past default, and that it was conditional on a reinsurer's failing to pay the money part of the arbitral award within 45 days. The implication (supported by the arbitrators' statement that the purpose of requiring the letter of credit was "to secure payment of the ultimate liability in *this* matter" (emphasis added)) is that the purpose of requiring a defaulting reinsurer to post a letter of credit was to secure the debt created by the award, not future, unrelated debts. The judgment of the Wisconsin state court confirming the arbitrators' award also states that the purpose of the letter of credit is "to secure the amounts" that the reinsurers had been determined by the arbitrators to owe Wausau. So when Banco finally paid the award, it was no longer obligated by its terms to post a letter of credit. Of course it should have sought clarification of the matter at the outset, as we said. But as no court or arbitral panel has ever ruled on the scope of the obligation (it appears not to have been an issue in the state court proceeding), the failure to have sought clarification has not waived or forfeited Banco's right to an adjudication of the issue.

It might seem, though, that in asking for clarification at this late date Banco is trying once again to mount a collateral attack on the judgment of the district court, which required the posting of the letter of credit. But that court explicitly left open the question what the letter of credit means: whether it is just meant to secure Banco's existing liability to Wausau, or whether as Wausau claims it secures future debts as well. If the former, then since Banco has at last satisfied that liability, it has no obligation to post the letter of credit. The former is the correct interpretation. No

purpose would be served by returning the case to the district court for the identical determination.

This ruling does not affect the accrued sanctions. Judicial orders must, unless stayed, be obeyed even when wrong. *Pasadena City Bd. of Education v. Spangler*, 427 U.S. 424, 439-40 (1976). Because of Banco's impressive record of obstinacy, moreover, we shall not lift the $4,000 a day sanction. When and if Banco pays the court and Wausau *all* moneys owing them, including all reasonable attorneys' fees incurred by Wausau in defending against Banco's appeal from the sanctions order and the denial of arbitration and in all subsequent proceedings in the district court required to extract the moneys due from Banco, the daily sanction shall cease to accrue.

The judgment is vacated insofar as it orders the posting of a letter of credit but is otherwise affirmed, with costs of the appeal to be borne by the respondent. The case is returned to the district court for the limited purpose of assuring Banco's compliance with the judgment as modified in this opinion. Further obduracy by Banco will result in the imposition of additional sanctions that will make $4,000 a day seem like the touch of a feather.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

A true Copy:
Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*